*In re* BRUCE FORREST, a Minor.

(No. 56672;

First District (3rd Division)—May 31, 1973.

David C. Thomas, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, James R. Carlson, and William K. Hedrick, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

After a hearing conducted without a jury in the juvenile division of the circuit court of Cook County, the defendant, Bruce Forrest, sixteen years of age, was adjudged to be delinquent. He had been charged by petition with robbery and aggravated battery. Defendant was committed to the Department of Corrections Juvenile Division until he attained the age of twenty-one or until sooner discharged by order of court. (We were advised at oral argument that defendant has been released on parole.)

On appeal, defendant contends that the trial court erred in not requiring the prosecution to produce certain alleged statements of one of its witnesses, and that the evidence was insufficient to support the finding of delinquency.

On July 16, 1971, between 11:30 and 11:45 P.M., Albert Brown and his wife were robbed in an apartment building in which they resided at 3549 South Federal Street in the City of Chicago. Mr. Brown was shot twice in the thigh during the robbery.

Albert Brown testified that as he and his wife entered the building they observed defendant along with a group of other boys. The Browns waited for an elevator, but the boys informed them that the elevator was out of order. After waiting several minutes, the Browns began the long walk up the building's enclosed stairs to their eleventh floor apart-

ment. As the Browns went up the stairs, defendant and another boy, also ascending the stairs, passed them. A short time later a third boy ascending the stairwell passed the Browns.

Mr. Brown further testified that when he and his wife reached the eighth floor landing, defendant, carrying a gun, entered the stairwell. While defendant pointed a gun at Brown, another boy ordered him to face the wall. When Brown failed to do so, defendant shot him twice. Brown testified that at this time his wallet, money and keys were taken. He also testified that his wife attempted to continue up the steps, but she was forced back down to the eighth floor landing, and her purse was taken. The entire incident took between five and ten minutes. On July 20, 1971, Brown saw defendant in the first floor of the building, and Mrs. Brown called the police.

During cross-examination, Brown testified that he had described his assailant to the police as being 5'3" tall, and shorter than himself. Defendant actually was 5'7" in height, and in court proved to be taller than Brown. Prior to the incident, Brown did not know defendant, nor did he recall ever seeing defendant before.

Mrs. Brown testified substantially to the same facts as her husband. She was unable to judge their assailant's height because during the incident he was standing on a different level of the stairs than they. After the incident, both boys called down from above to Mrs. Brown to come and get her purse.

Both Browns testified that the stairwell was narrow and that the light on the eighth floor landing was not working. Mrs. Brown testified that when they first saw defendant on the first floor, eight boys were with him. Brown initially testified that he did not know how many boys were there. Subsequently he testified that four boys were with defendant.

Defendant offered alibi testimony. John E. Thompson, the employer of defendant's brother, testified that on the night in question he was present in his auto with defendant, Donald Stevens and defendant's brother, Mitchell Forrest, from 11:30 or 11:40 P.M. until 12:20 or 12:25 A.M. After obtaining some beer and wine, they parked the auto in the parking lot of the building in question and talked until 12:25 A.M. Thompson's testimony was supported by that of Donald Stevens, Mitchell Forrest and defendant.

Mitchell Forrest further testified that the stairwell in the apartment building was narrow and dark, and that on the evening in question the light in the eighth floor stairwell was not working.

Defendant's first contention is that the trial court committed reversible error in not ordering the State to produce a previous written statement of Albert Brown. Defendant argues that the defendant was

prejudiced by denial of the opportunity to impeach Brown by means of such a statement.

During cross-examination, Albert Brown stated that he had given a description of his assailant to the police and they had written it down. At this juncture defense counsel requested that the State produce this particular statement. The prosecutor initially made a general objection to this request. Subsequently, the prosecutor stated that defense counsel must be referring to a police case report in which "Brown gives a general description to the police, and they put it in the report." The following colloquy then took place:

> "PROSECUTOR: And the State has no statement.
>
> DEFENSE COUNSEL: The State has in their files no paper containing a statement—
>
> PROSECUTOR: No.
>
> DEFENSE COUNSEL:—made by Mr. Brown to the police?
>
> PROSECUTOR: No.
>
> DEFENSE COUNSEL: Okay."

■■ The State is required to furnish on demand to the defendant for impeachment purposes specific statements in its possession made by a State's witness which have been established to exist and which are in the witness's own words or substantially verbatim. (*People v. Neiman*, 30 Ill.2d 393, 197 N.E.2d 8.) Where a request is made for the production of such specific statements, and there are indications that such statements are in the possession of the prosecution which might be useful to the defendant for impeachment purposes, a right sense of justice demands that such should be made available to the defense. (*People v. Moses*, 11 Ill.2d 84, 142 N.E.2d 1.) However, this rule applies only to substantially verbatim statements, not to "thumbnail" summaries (*People v. Torello*, 109 Ill.App.2d 443, 248 N.E.2d 725), and a proper foundation must be laid by the defense to determine the existence of the statement. (*People v. Golson*, 37 Ill.2d 419, 226 N.E.2d 610.) Once the defense has adduced evidence indicating the existence of a statement reduced to a writing in the possession of the prosecution, it is entitled to an *in camera* inspection of such writings by the court to ascertain whether the statement comes within the purview of the rule. *People v. Montgomery*, 51 Ill.2d 198, 282 N.E.2d 138.

In the instant case, the defense did elicit testimony from Brown that he had given a description of his assailant to the police and that they had written it down. However, in the face of the Assistant State's Attorney's unequivocal denial of the existence of any substantially verbatim statement, defendant did not request the court to ascertain through an *in camera* inspection whether such a statement was in the State's posses-

sion. Indeed, the record indicates, as noted above, that defense counsel apparently accepted the prosecutor's declaration that the State had no such statement in its possession.

■■ Our Supreme Court has recognized that the failure to request an *in camera* inspection by the court amounts to a waiver of this right. (*People v. Wright*, 30 Ill.2d 519, 198 N.E.2d 316.) And it has been held in circumstances similar to the present case that the failure to request the police report or an *in camera* examination by the court does constitute a failure to lay a proper foundation to compel production, and waives any right to such statement. (*People v. Lanier*, 98 Ill.App.2d 89, 240 N.E.2d 288; *People v. Hill*, 98 Ill.App.2d 352, 240 N.E.2d 801, *cert. denied*, 395 U.S. 984.) In each of these cases, defense counsel, after eliciting testimony from a State's witness that the police had written down a statement, failed to request a court examination of the State's files to ascertain whether a substantially verbatim document existed. In the instant case, there was a failure to request a court examination of the file plus an explicit acceptance by the defense of the prosecutor's denial that he had any such statement in his possession. The trial court did not commit reversible error in failing to require the State to furnish defendant with an alleged statement of the State witness.

Defendant also argues that the court's finding of delinquency was not adequately supported by the evidence offered at trial. He argues that the identification testimony of the Browns was confusing and contradictory, especially regarding defendant's height, and that the alibi testimony of the four defense witnesses further demonstrated that the evidence, as a matter of law, was insufficient.

■■ If a criminal offense is the basis for a charge of delinquency the standard of proof is the same as that in a criminal proceedings, proof beyond a reasonable doubt. (Ill. Rev. Stat. 1971, ch. 37, par. 704—6; *In re Interest of Landorf*, 7 Ill.App.3d 89, 287 N.E.2d 21.) We believe that the State satisfied its burden of proving defendant guilty beyond a reasonable doubt.

■■ It is within the province of the trier of fact, with a superior opportunity to hear the testimony and observe the demeanor of witnesses, to judge credibility, choosing whom to believe and not to believe. (*People v. Hyde*, 1 Ill.App.3d 831, 275 N.E.2d 239.) And discrepancies in the testimony of witnesses do not necessarily destroy credibility. (*People v. Martinez*, 4 Ill.App.3d 1072, 283 N.E.2d 268.) On review the trier of fact's judgment regarding the sufficiency of identification testimony will not be disturbed unless the evidence is so improbable or un-

satisfactory as to, as a matter of law, create a reasonable doubt of defendant's guilt. *People v. Adams*, 8 Ill.App.3d 8, 288 N.E.2d 724.

■■ In the instant case, the State presented two eyewitnesses who both positively identified defendant as their assailant. They observed defendant before, during and after the incident. Although the light bulb on the eighth floor landing was out, there was some light, and the eyewitnesses had an opportunity to view defendant at close quarters for five to ten minutes. While Mr. Brown's description of defendant's height was faulty, his wife explained that she was unable to judge defendant's height because he was on a different level of stairs. Moreover, there was no obligation on the trial court to believe the alibi evidence presented by the defendant. (*People v. Jackson*, 95 Ill.App.2d 28, 237 N.E.2d 858.) The trial court chose to accept the testimony of the eyewitnesses rather than the alibi evidence offered on behalf of defendant. We cannot say that the court's determination was erroneous.

For the reasons stated, the judgment of the circuit court is affirmed.

Judgment affirmed.

SCHWARTZ and McGLOON, JJ., concur.