# No. 25071

## The People of the State of Colorado v.
## James Dale Manier
(518 P.2d 811)

Decided January 28, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Aurel M. Kelly, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Kenneth J. Russell, Deputy, Stephen Rench, Deputy, for defendant-appellant.

Nathan Davidovich, amicus curiae.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Defendant-Appellant James Dale Manier was convicted of first-degree murder in 1970. Manier appeals that conviction.

Briefly, the facts in this case are as follows: The victim, Josephine Manier Collins, was the defendant's wife. While he was in prison for a previous offense she began living with and married Carl Collins, although there was no divorce between her and Manier. She was pregnant with Collins' child at the time of her death. Manier attended a party on December 31, 1969, at which he drank heavily. He fell asleep at the party, and upon arising in the morning continued drinking at various bars. Later in the evening of January 1, he purchased two pills in a bar, one of which was allegedly L.S.D. Manier testified that he took the pills and that things began to get strange. Manier had a gun which he had obtained at the New Year's eve party. He testified that he woke up in the snow with the gun frozen to his hand with blood and that the last thing he remembered was that he approached his wife's house with a can of beer in his hand and kicked on the door.

Evidence presented by the prosecution showed that Manier forced his way into the house where Josephine and Carl Collins were living between 1:00 and 1:30 a.m. on January 2, 1970. Upon gaining entrance Manier shot Carl Collins twice, stating he intended to kill Collins and Josephine. Defendant then shot and killed Josephine. Collins survived.

■ Manier alleges the trial court erred: (1) in refusing to allow the expert testimony of Dr. Manes, a psychiatrist, about the mental condition accompanying defendant's initial use of L.S.D.; (2) in failing to require the prosecution to produce for defense inspection an alleged statement of Carl Collins taken by police shortly after the offense occurred; (3) in excluding defense evidence consisting of letters from the defendant to his mother and to the defendant from his wife, Josephine; and (4) in the instruction to the jury regarding the effects of L.S.D. upon the elements of deliberation and premeditation. He further contends that he was denied a fair trial because the jury was told that the victim was pregnant at the time of her death; that the six jurors who voiced categorical objection to the imposition of the death penalty deprived Manier of his right to an impartial jury under the Colorado and United States Constitutions; that the imposition of the death penalty here constituted a violation of the Eighth and Ninth Amendments to the United States Constitution and Article II, § 22 of the Colorado Constitution. The last issue has become moot as the defendant's sentence presently is life imprisonment. As to the remaining issues (1) through (6), we find that no reversible error was committed by the trial court and we therefore affirm.

I.

■ It is defendant's first contention that the testimony of their psychiatrist, Dr. Manes, to show the mental condition accompanying the initial use of L.S.D. was relevant to the element of defendant's intent to commit murder, and it was therefore error to exclude it.

Prior to the questioning of Dr. Manes, Dr. Hilton, another psychiatrist, had already properly testified for the defense

that from his personal examination of Manier and the statement made by Manier to him, it was his opinion that Manier was at the time of the killing so confused and disoriented from toxic effect of the drug which Manier allegedly took that he could not premeditate.

The defense then attempted to examine Dr. Manes by hypothetical question on the issue of the effect of L.S.D. on a first-time user who is alone. At an *in camera* hearing, Dr. Manes stated that there would be a difference in reaction depending upon the strength of the pill and the individual involved, and that he would have to know this before he could give his opinion. The strength of the pills was not in evidence. Of course, the fact that the expert witness had not examined the accused does not necessarily disqualify him from expressing his opinion based upon a hypothetical question. *Riss & Company v. Galloway,* 108 Colo. 93, 114 P.2d 550. But such opinion must be based on facts in evidence. *Liber v. Flor,* 160 Colo. 7, 415 P.2d 332; *McGonigal v. People,* 74 Colo. 270, 220 P. 1003. Here there was no evidence to indicate the amount of L.S.D. ingested. There was no error, therefore, in the exclusion of this testimony by the trial court.

## II.

It is defendant's second contention that he was prejudiced by the prosecution's failure to produce for defense inspection an alleged statement of Carl Collins, the key prosecution witness, taken shortly after the offense. Pursuant to Crim. P. 16, defendant, prior to cross-examination of Collins, requested any statements Collins had made. The district attorney advised that a statement taken by Detective Lohrson January 6, 1970, in the intensive care unit of the Swedish Hospital was the only statement of Collins in their possession and this was tendered to the defense. The district attorney commented that there were no additional statements to tender to defense counsel. The record also indicates that, prior to trial, the district attorney opened his file to defense counsel, containing, according to the district

attorney, all the evidence of which he was aware. Toward the end of the cross-examination of Collins, the following took place:

"Q. You were in the hospital in January of 1970 after the shooting, after you were shot, Mr. Collins, and some police officers came and talked to you, is that right?

A. Yes, sir.

Q. Before January 6, 1970, did any police officer talk to you about this incident?

A. Yes, sir, two uniformed Denver police officers.

Q. Where did they talk to you?

A. In Intensive Care.

Q. They write down what you had to say to them about this incident?

A. I believe so, sir.

MR. COLES: I'd request that the District Attorney supply the defense with those statements the witness speaks of.

THE COURT: If they have them.

MR. KENNY: We have no additional statements of this witness, Your Honor.

THE COURT: Go ahead, Mr. Coles.

Q. You did give police officers, other than the police, or Detectives Lohr and Rankin, on January 6, 1970, a statement about this transaction; isn't this right?

A. When I was in Intensive Care there was two uniformed Denver police officers — I don't know where they were stationed or what — asked me what happened and so on.

Q. Did you tell them what happened?

A. To the best of my knowledge I did.

Q. And while you were telling them what happened, were they writing down what you said?

A. I don't know, sir. They had me strapped down on the bed. I couldn't sit up and look."

Defense counsel did not request an *in camera* hearing and cross-examination continued on other matters.

Defendant's argument here is based largely on *Ortega v. People,* 162 Colo. 358, 426 P.2d 180. In that case, the chief prosecution witness testified that on the night of the

robbery, a police officer had questioned her and taken detailed notes on what she said. Defense counsel asked that the People produce the notes and the trial court denied the request. Defense counsel later offered to attempt to prove the existence of the notes and that the notes were in the possession of the prosecution or in the possession of persons in control of the prosecution. The offer of proof was rejected. We held, in *Ortega,* that the trial court should have held an *in camera* hearing to determine if the notes sought were in fact in the possession or control of the prosecution and whether the notes were in substance recitals of oral statements.

We have also held that it is not error to refuse to order the district attorney to produce a non-existing statement. *Oaks v. People,* 161 Colo. 561, 424 P.2d 115; *Hopper v. People,* 152 Colo. 405, 382 P.2d 540. The district attorney here stated that he did not have such a statement. No *in camera* hearing was requested to pursue the matter further and under such circumstances, we find no error in the trial court action. *In re Forrest,* 12 Ill.App.3d 250, 298 N.E.2d 197.

### III.

It is defendant's third contention that the trial court erred in refusing to allow the admission of letters written to Manier by his wife between May 1968 and February 1969, while he was in the reformatory, and by him to his mother between May 1968 and August 1969. The letters reputedly showed the love and affection between the defendant and his wife and his state of mind and intent. They were offered at trial to show the existing relationship between the parties and to substantiate Manier's testimony that he loved Josephine. The letters from Manier's mother were also intended to rebut any inferences available from the prosecution's cross-examination of defendant's witnesses that there came a time when he didn't care about Josephine and that the only reason Manier cared about his family was so he would have a home to go to for a parole program. The trial court excluded both exhibits on the grounds they were not material or relevant to any issue.

The loving relationship between Manier and his wife was uncontroverted in the record, at least until February of 1969 when she met Collins and when the letters sought to be admitted stopped. Certainly the wife's letters to Manier were not probative of his state of mind toward her after February 1969 when the letters stopped. We point out that the killing did not occur until January of 1970. Nor were the letters from Manier to his mother between May of 1968 and August 1969 relevant to his state of mind in January 1970. Insofar as both exhibits tended to establish a loving relationship between May of 1968 and August 1969, if in fact they did, they were merely cumulative of the defendant's uncontradicted testimony. Admission of cumulative evidence is, of course, within the discretion of the trial court and its ruling will not be overturned unless a clear abuse of discretion appears. *Maes v. People,* 169 Colo. 200, 454 P.2d 792; *Lira v. People,* 166 Colo. 498, 445 P.2d 62; *Silva v. People,* 158 Colo. 326, 407 P.2d 38. Under the circumstances here, we find no abuse of discretion.

## IV.

Defendant next argues that the trial court erred in failing to ·see that the jury was properly instructed regarding the effects of L.S.D. upon the elements of deliberation and premeditation. The Instruction Manier complains of is number 15:

"The statutes of this state provide that voluntary intoxication shall not be an excuse for any crime. But you are instructed, nevertheless, that you may consider whether or not at the time of the alleged murder the defendant was under the influence of any intoxicant to such an extent as to be utterly incapable of forming any intent to commit the alleged murder. And if you find that at the time he was so under the influence of any intoxicant as to be utterly incapable of forming the intention to commit the aforementioned offense, or if upon a consideration of all the evidence you have a reasonable doubt with reference thereto, you will find the defendant not guilty of Murder in the First Degree."

First, Manier contends that the jury was never apprised of

the fact that if they found the defendant was under the influence of an intoxicant so as to be unable to form a willful, deliberate and premeditated design to take the life of another that they were to find the defendant not guilty of first-degree murder. Secondly, he argues that the trial court should have instructed the jury that if insanity results from voluntary intoxication, that this could also mitigate the offense.

At the outset, we note that Manier did not tender his own instructions on these points, nor did he object to the instructions given. Further, he did not raise objections to the instructions in his motion for a new trial. We are not required to review the arguments raised here for the first time. *Rodriguez v. People,* 168 Colo. 190, 450 P.2d 645; *Mathis v. People,* 167 Colo. 504, 448 P.2d 633, and we do not do so unless fundamental error appears. *People v. Archuleta,* 180 Colo. 156, 503 P.2d 346; *Mathis, supra.*

In analyzing whether there is fundamental error here, we note the well established rule that in determining the effect of a particular instruction it must be read in conjunction with the other instructions, and if taken as a whole they adequately inform the jury of the law, there is no reversible error. *Egle v. People,* 159 Colo. 217, 411 P.2d 325; *Balltrip v. People,* 157 Colo. 108, 401 P.2d 259. Applying this rule to the instant case, we note that while defendant's suggestion in his brief as to a proper instruction is a correct statement of the law, we find that Instruction 15, when read with Instructions 8 through 14 (specific intent, definition of murder, deliberation and premeditation, lesser included offenses, distinction between express and implied malice) adequately inform the jury of the law.

Defendant further asserts that the instruction was inadequate since the voluntary "intoxication" at issue was not that which is the usual sort, but rather that the result of the ingestion of the L.S.D. was that the defendant was rendered temporarily insane. If the thrust of this argument is that there should have been an instruction using the words "drug intoxication" or "L.S.D." rather than a stock "intoxi-

cation" instruction, it must be pointed out that the record indicates the jury must have understood what the instruction referred to. A medical expert, Dr. Hilton, testified as to "drug intoxication," and Dr. Cohen, another expert, testified that alcohol is a drug. In closing arguments counsel for both the defense and the prosecution indicated to the jury that the instruction referred to intoxication from L.S.D. ingestion. Further, if defendant's argument as to the inadequacy of the instruction reflects a desire to assert the defense of insanity, he should not have withdrawn his plea of not guilty by reason of insanity. *Russell v. People,* 155 Colo. 422, 395 P.2d 16, 1965 Perm. Supp., C.R.S. 1963, 39-8-1(1).

## V.

Further, defendant contends that he was denied a fair trial because the jury heard that his wife was pregnant when she was killed. Dr. Ogura, the Coroner's Pathologist for the City and County of Denver, was permitted over defense objection to testify that in his opinion the baby, which was almost full term, died due to loss of blood by the mother, whereby the infant was deprived of its oxygen supply.

First, we note that there was ample evidence elicited by both defense and prosecution counsel of the fact of Josephine's pregnancy, that the birth was expected shortly, that Manier was angry when told by Collins that he was married to Josephine and they were expecting a baby. People's exhibits A and D, admitted without objection, are photographs of the victim at the scene and after the autopsy, and indicated her pregnancy at the time of her death. While we recognize that the testimony of Dr. Ogura could have had an effect upon the jury, it is nevertheless true that evidence of other offenses are admissible which are part of a single transaction, an integral part of the total picture surrounding the homicide. *Wooley v. People,* 148 Colo. 392, 367 P.2d 903; *Abshier v. People,* 87 Colo. 507, 289 P. 1081. Josephine's pregnancy and the death of the fetus, as indicated by all the other evidence of it in the case, clearly was an integral part of the circumstances surrounding the

murder and its admission into evidence was not an abuse of the trial court's discretion.

## VI.

Defendant's contention that he was denied his right to an impartial jury because the jury was death qualified has already been decided adversely to him. Both the United States Supreme Court and the Colorado Supreme Court have rejected the argument that death qualified juries are more prone to convict that to acquit. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776; *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; *Carroll v. People,* 177 Colo. 288, 494 P.2d 80; *Padilla v. People,* 171 Colo. 521, 470 P.2d 846; *Hampton v. People,* 171 Colo. 153, 465 P.2d 394.

Accordingly, we affirm.

MR. JUSTICE ERICKSON does not participate.