Timothy LITWINSKY, Petitioner,

v.

Aristedes ZAVARAS and The Attorney General of the State of Colorado, Respondents.

No. 99–K–1234.

United States District Court, D. Colorado.

Jan. 23, 2001.

Andrew Burch Reid, Boulder, CO, for Petitioner.

Roger Griffin Billotte, Attorney General's Office Criminal Enforcement Appellate, Denver, CO, for Respondents.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This matter is before me on a petition for writ of habeas corpus. The petitioner, Timothy Litwinsky, was convicted of several offenses in 1995 and is currently in the custody of the Colorado Department of Corrections. Litwinsky asserts two claims in this action. For the reasons stated

below, Litwinsky's petition is granted in part and denied in part.

## I. PROCEDURAL AND FACTUAL BACKGROUND.

During the summer of 1994, Litwinsky dated Sharon Maki, the victim in the underlying criminal case. Their relationship ended in November and Litwinsky moved out-of-state.

In early January 1995, Maki found a note on her car from Litwinsky indicating he had moved back to Colorado and was sorry for any pain he caused her during their break-up. On January 11, 1995, Maki applied for a temporary restraining order against Litwinsky in Arapahoe County. The complaint contained the following pre-printed language:

> The Defendant has attacked, beaten, molested, or threatened the Plaintiff with serious bodily harm, and the Plaintiff fears for his/her safety and well-being and believes the Defendant will continue his/her actions unless he/she is restrained by the Court.

Maki completed the form by writing a more detailed description of Litwinsky's conduct:

> After stealing my 2nd car and robbing my apartment, Tim was requesting that we get back together. I refused and he threatened my life. During our relationship he threatened to hurt me and yelled, swore, and called me names often. He left the State, but now he is back and he has been watching me, leaving notes for me and writing me.

In a questionnaire attached to the complaint, Maki also indicated that Litwinsky used alcohol and drugs and he had a "past arrest or confinement history." The restraining order was served on Litwinsky later that day.

The next morning, Litwinsky confronted Maki as she was leaving her apartment to go to work. Litwinsky entered her apartment without permission. He showed Maki the handle of a gun tucked in his waistband. Maki told Litwinsky to leave but he put his hand over her mouth and said, "Having me served, real cute. No one is going to tell me whether I can touch you or not." Litwinsky then threw Maki's purse at her and demanded money. Maki gave him about $10 and tried to call "911." Litwinsky disabled the telephone. Maki tried to escape but Litwinsky physically stopped her. When she started screaming, Litwinsky punched her twice and continued to demand money.

In the meantime, when Maki failed to arrive at work, her mother called the police. When the police arrived at Maki's apartment, Litwinsky tried to hide the gun, which turned out to be a toy. Litwinsky was arrested and charged with: (1) second-degree kidnaping, in violation of Colo.Rev.Stat. § 18–3–302(1); (2) aggravated robbery, in violation of Colo.Rev. Stat. § 18–4–302(1)(d); (3) first-degree burglary, in violation of Colo.Rev.Stat. § 18–4–202(1); (4) assault in the third degree, in violation of Colo.Rev.Stat. § 18–3–204; (5) violation. of a restraining order, in violation of Colo.Rev.Stat. § 18–6–803.5(1); and (6) criminal mischief, in violation of Colo.Rev.Stat. § 18–4–501(1).

Before the trial began in September 1995, Litwinsky filed a motion in limine to prohibit evidence of any prior bad acts under Colo.R.Evid. 404(b). The trial court granted the motion. During the trial, the prosecution moved to admit the restraining order as well as the underlying complaint and questionnaire. There were various discussions about the admissibility of these documents. The documents were eventually admitted but the references, in the complaint, to Litwinsky's "stealing [Maki's] 2nd car" and "robbing [her] apartment" were redacted. The trial court did not give a limiting instruction regarding the other prior bad acts referred to in the documents when they were admitted.

At the conclusion of the trial, the jury acquitted Litwinsky on the kidnaping charge but found him guilty of the lesser offense of false imprisonment. The jury

also found Litwinsky guilty on charges of aggravated robbery, first-degree burglary, third-degree assault, and violation of the restraining order. The jury deadlocked on the charge of criminal mischief and the prosecution dismissed that count.

In December 1995, Litwinsky was sentenced to both concurrent and consecutive terms of imprisonment. During the sentencing, the trial court stated as follows:

> For the most part, the Court feels that the offenses are all part and parcel of the same criminal episode. And, in fact, there is some cross-use and elements in the offenses themselves. The one exception is that the Court finds that the third-degree assault is a separate offense.

The trial court then sentenced Litwinsky to a term of two years in county jail on the assault charge, to run consecutively to the sentences on all of the remaining charges which would run concurrently with respect to each other. Litwinsky received terms of sixteen years on the robbery conviction, twelve years on the conviction for burglary, and one year each on the false imprisonment and violation of a restraining order convictions.

Litwinsky served his jail time for the assault charge with credit for 331 days he had already served. He is presently in the custody of the Colorado Department of Corrections serving the sixteen-year sentence.

Litwinsky appealed his convictions in the state courts on a variety of issues, including the two issues before me in this habeas corpus action. The judgments and sentences were affirmed by the Colorado Court of Appeals in *People v. Litwinsky*, No. 96CA0149 (Colo.App. April 30, 1998). The Colorado Supreme Court rejected Litwinsky's petition for writ of certiorari on December 7, 1998. The present action was commenced in June 1999 when Litwinsky filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Litwinsky asserts two claims in this case: (1) the trial court subjected him to double jeopardy in violation of the Fifth and Fourteenth Amendments to the United States Constitution by failing to merge his conviction for third-degree assault into his conviction for first-degree burglary because third-degree assault is a lesser-included offense of first-degree burglary, and (2) his constitutional right to a fair trial was violated when the court admitted evidence of irrelevant and highly prejudicial prior bad acts.

## II. *STANDARD OF REVIEW.*

In its recent opinion in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court clarified the proper standard of review for claims asserted in a petition for writ of habeas corpus. This new standard places strict constraints on my power to grant habeas corpus relief. Where, as in the instant case, a petitioner's claims have been adjudicated on their merits by the state courts,

> the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) 'was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.' Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams,* 120 S.Ct. at 1523; *see also Van Woudenberg v. Gibson,* 211 F.3d 560, 566 (10th Cir.2000). It is not enough that the state court may have applied the law erroneously. The writ may issue only if it is clear that "the application was also objectively unreasonable." *Van Woudenberg,* 211 F.3d at 566–67 n. 4 (*citing Williams,* 120 S.Ct. at 1521–23).

### III. *DOUBLE JEOPARDY AND THE MERGER DOCTRINE.*

The constitutional prohibition against double jeopardy guarantees that no person will twice be put in danger of conviction and punishment for the same offense. *U.S. Const.* amend. V; *Colo. Const.* art. II, § 18. The judicially-created doctrine of "merger" has evolved as an aspect of double jeopardy. In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court decided the applicable rule:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*Blockburger,* 284 U.S. at 304, 52 S.Ct. 180.

■ The Colorado Supreme Court adopted the *Blockburger* test in a series of cases beginning with *People v. McKenzie,* 169 Colo. 521, 458 P.2d 232 (1969). Under Colorado law, "a defendant may not be convicted of more than one offense if one offense is a lesser included offense of the other." *Armintrout v. People,* 864 P.2d 576, 578 (Colo.1993)(*en banc* )(applying *McKenzie* ).* * The lesser-included offense "merges" into the conviction of the greater offense and the defendant cannot be separately punished for it. *People v. Rodriguez,* 914 P.2d 230, 286 (Colo. 1996)(*en banc* ). "In order to determine

whether one offense is included in another, [the court must] compare the elements of the statutes involved...." *Id.; see also People v. Garcia,* 940 P.2d 357, 360 (Colo. 1997). The rule of merger in Colorado "treats an offense as lesser included when proof of the essential elements of the greater offense necessarily establishes the elements required to prove the lesser offense." *Armintrout,* 864 P.2d at 579; *see also People v. Henderson,* 810 P.2d 1058, 1061 (Colo.1991)(*en banc* ); *Boulies v. People,* 770 P.2d 1274, 1282 (Colo.1989).[1]

In the instant case, the petitioner claims that third-degree assault is a lesser-included offense of first-degree burglary and, therefore, his assault conviction should have merged into his conviction for burglary. In Colorado, first-degree burglary is committed when a person

> knowingly enters unlawfully or remains unlawfully ... in a building or occupied structure with intent to commit therein a crime ... against another person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, [he] or another participant in the crime assaults or menaces any person, or [he] or another participant is armed with explosives or a deadly weapon.

Colo.Rev.Stat. § 18–4–202(1) (2000).

■ Under the terms of this statute, assault is one of four predicate offenses for first-degree burglary in Colorado. Where assault is the predicate offense, the elements of first-degree burglary necessarily include all of the elements of assault. Thus, applying the principles of Colorado law set forth above, assault is clearly a lesser-included offense of first-degree burglary when assault is the predicate offense. The Colorado Court of Appeals acknowledged as much in its decision in *People v.*

---

**1.** In Colorado, the merger doctrine pertaining to lesser-included offenses has been codified. A lesser-included offense as one "established by proof of the same or less than all the facts required to establish the commission of the offense charged." Colo.Rev.Stat. § 18–1–408(1).

*Bielecki,* 964 P.2d 598, 606, 608 (Colo.App. 1998).[2]

■ The Colorado Court of Appeals denied Litwinsky's appeal on this issue. The Court ruled as follows regarding the merger issue:

> According to § 18–4–202(1), one can be guilty of first degree burglary by committing assault or menacing by being armed with explosives, or by being armed with a deadly weapon. It is possible, then, to commit first degree burglary without also committing assault. For third degree assault to be construed as a lesser included offense of first degree burglary, there must be no other means by which to commit the burglary other than by also committing assault. As there are three alternative methods, however, assault cannot be a lesser included offense of burglary.

*People v. Litwinsky,* slip op. at 6. The Court of Appeals cited no authority for this reasoning or the conclusion reached as a result. Under the circumstances of this case, I find the Court of Appeals' decision clearly erroneous and contrary to instructive rulings by both the United States and Colorado Supreme Courts. In addition, I specifically find the decision "objectively unreasonable" in this case.

There are four alternate means by which a person may commit first-degree burglary under Colorado's Criminal Code once he has unlawfully entered a building or occupied structure with the intent of committing a crime therein: under those circumstances, the person commits first degree burglary if he "[1] assaults *or* [2] menaces" anyone inside; *"or* [if he] is [3] armed with explosives *or* [4] a deadly weapon." Colo. Rev.Stat. § 18–4–202(1)(emphasis mine). The statute is phrased in the disjunctive; only one of the predicate offenses is required to complete the offense of first-

degree burglary. I disagree, however, that the fact burglary *may* be committed by means other than by committing assault precludes application of the merger doctrine in all cases where a defendant is charged with both burglary and assault. To the contrary, if there is any possibility that a given burglary conviction was predicated upon the same assault with which the defendant was separately and additionally charged and convicted, it would be improper to do anything other than apply the merger doctrine lest one run afoul of the constitutional protections against double jeopardy.

This conclusion is supported by the United States Supreme Court's decision in *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), which rejected the analysis adopted by the Colorado Court of Appeals here. In *Whalen,* the defendant was convicted of rape and felony murder. The applicable felony murder statute proscribed the killing of a human being in the course of any of six specified felonies, including rape. The defendant argued on appeal that his rape conviction should merge into the felony murder conviction because rape is a predicate offense for felony murder. The government, on the other hand, argued that because felony murder can be completed by the commission of other predicate offenses (kidnaping, arson, etc.), felony murder does not in all cases require proof of rape such that felony murder and rape are not the "same offense" for purposes of the *Blockburger* test. The Supreme Court rejected the government's reasoning:

> Where the offense to be proved does not include proof of a rape—for example, where the offense is a killing in the perpetration of a robbery—the offense is of course different from the offense of rape, and the Government is correct in

**2.** In *Bielecki,* the Court of Appeals agreed with the state that second-degree burglary and third-degree assault are lesser included offenses of first-degree burglary. *Bielecki,* 964 P.2d at 608. The Court of Appeals re-

manded to the trial court to vacate the defendant's convictions for second-degree burglary and third-degree assault, finding they were merged into the defendant's conviction for first-degree burglary. *Id.*

believing that cumulative punishments for the felony murder and for a rape would be permitted under *Blockburger.* In the present case, however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense. There would be no question in this regard if Congress, instead of listing the six lesser included offenses in the alternative, had separately proscribed the six different species of felony murder under six statutory provisions. It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it. To the extent that the Government's argument persuades us that the matter is not entirely fee of doubt, the doubt must be resolved in favor of lenity. *See Simpson v. United States,* 435 U.S. 6, 14–15, 98 S.Ct. 909, 55 L.Ed.2d 70.

*Whalen,* 445 U.S. at 694, 100 S.Ct. 1432 (footnote omitted).

The Colorado Court of Appeals' decision in the instant case is contrary to *Whalen.*[3] Under *Whalen,* predicate offenses stated in the disjunctive are separate lesser included offenses and the merger doctrine, in appropriate cases, will apply. Because the Colorado Court of Appeals "unreasonably applied the governing legal principle to the facts of the prisoner's case," *see Williams,* 120 S.Ct. at 1523, it is not entitled to deference. This error, however, does not resolve the question of whether Litwinsky's assault conviction in this case should be merged into his conviction for burglary.

If Litwinsky's burglary conviction was predicated on his conduct in assaulting Maki, then his separate conviction for assault would be merged into the burglary conviction. If the burglary conviction were predicated on an offense of menacing, however, then the assault conviction would not be merged. The difficulty in this case arises from the fact that the jurors at Litwinsky's criminal trial were instructed they could convict him of first-degree burglary if they found that he either assaulted or menaced Maki, and then were given a general verdict form on which to record their answer. By convicting Litwinsky, generally, of first degree burglary and assault, there was no means by which the trial court or any court of review could determine what the predicate offense for the burglary conviction or whether the burglary and assault convictions should be merged. The State of Colorado in the instant case argues the convictions cannot be merged because the jury "might have" predicated the burglary conviction on a determination that Litwinsky had menaced Maki after entering her home. This is feeble ground indeed on which to premise a conviction that "might also," by definition, be constitutionally infirm because the jury "might also" have predicated the burglary conviction on the same conduct for which it returned a separate conviction for assault. Because of the general verdict, we will never know. Thus the question in this case is whether Litwinsky's concurrent sentences for burglary and assault are constitutional even if they "might" be the result of a conviction on a second charge that is a lesser included offense of the first.[4] There is no doubt they are not.

---

**3.** The Colorado Court of Appeals' decision in the instant case is also contrary to the Colorado Supreme Court's decision in *Armintrout, supra.* In that case, the court held that second-degree burglary is a lesser-included offense of first-degree burglary. In the context of discussing the issue of merger, the court addressed the fact that Colo.Rev.Stat. § 18–4–203 is a disjunctive statute. The court specifically found that "second degree burglary is a lesser included offense of first degree burglary, even though one may commit the crime of second degree burglary in additional ways." *Armintrout,* 864 P.2d at 582.

**4.** There appears to be sufficient evidence at trial that Litwinsky menaced Maki, under Col-

The few reported cases dealing with this specific issue have resolved any ambiguity in favor of the criminal defendant. None of these is a federal case, but I find the reasoning in each persuasive. Fundamental fairness dictates a similar result in the instant case.

In a series of cases beginning with *State v. Frye*, 283 Md. 709, 393 A.2d 1372 (1978), Maryland state courts have consistently held that any ambiguity resulting from a general verdict, where merger is at issue, must be resolved in the defendant's favor. *See, e.g., Nightingale v. State*, 312 Md. 699, 542 A.2d 373, 377–78 (1988); *Snowden v. State*, 321 Md. 612, 583 A.2d 1056, 1059 (1991); *State v. Gross*, 134 Md.App. 528, 760 A.2d 725, 746 (2000); *see also State v. Rodriguez*, 113 N.M. 767, 833 P.2d 244, 248–49 (1992).

In *Frye*, the defendants were charged in separate cases with murder. The juries in both cases were allowed to convict the defendants of murder based on alternate theories: the theory of willful, deliberate and premeditated murder and the theory of felony murder. Double jeopardy was implicated to the extent the juries decided the defendants committed felony murder as each defendant was convicted of a felony or felonies that would merge with their convictions for murder. Because the trial courts failed to give any special instructions to the jury and the verdicts were general, there was no way to determine, on appeal, which of the two theories the juries used in determining the defendants' guilt. The Maryland Court of Appeals decided that any doubt must be resolved in the defendant's favor. 393 A.2d at 1380. The Court presumed the verdicts were based on the felony-murder rationale and the underlying felonies were deemed merged into the murder convictions. *Id.*

This situation is similar to federal cases where the unconstitutionality of one of two theories presented to the jury invalidates the verdict. *E.g. Leary v. United States*, 395 U.S. 6, 31–32, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) ("It has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside."); *see also Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). In the instant case, the conviction and sentence, rather than the verdict, involve a situation where one of two theories is unconstitutional.

I conclude the ambiguity caused by the general verdict in this case must be construed in Litwinsky's favor. Had Litwinsky been charged with both assault and menacing and the jury had convicted him on both, clearly one or the other of these convictions would merge with an additional conviction for burglary. The Respondent in this case concedes as much, but speculates that "the State, perhaps, anticipating a claim of double jeopardy/merger," purposefully elected not to "charge [Litwinsky with] menacing, despite the evidence supporting the charge" in order to avoid such ambiguity. Resp. to Pet.'s Br. in Supp. of Writ of Habeus Corpus, p. 7.

I find it fundamentally unfair in a case to conclude with a general verdict that the State would act with deliberation to rely on an uncharged lesser-included offense to support a burglary conviction in order to avoid a merger issue. In the instant case, the fact that menacing was not charged should not, and does not, change the fact that assault is a lesser-included offense of burglary and the jury, in issuing a general verdict, may have convicted Litwinskya second time for conduct that is a lesser included offense of a separate conviction. This case serves as another of many examples of why the use of a general verdict is improvident and invites reversal and, in this case, even habeas relief. Under the circumstances of this case, I conclude Litwinsky's assault conviction merges into his conviction for first-degree burglary such

orado law and the instructions given by the trial court.

that the conviction and sentence for the assault charge must be vacated.

### IV. EVIDENCE OF PRIOR BAD ACTS.

In his second claim for habeas corpus relief, Litwinsky argues the trial court violated his constitutional right to fair trial by erroneously admitting evidence of prior bad acts. Litwinsky further argues that, even had the evidence been relevant to the proceedings before it, the trial court erred by not giving a limiting instruction at the time the evidence was admitted. The prior bad acts to which Litwinsky objects are those to which Maki referred in filling out her complaint and questionnaire in support of her request for a temporary restraining order against him. These documents were admitted at trial along with a copy of the restraining order to prove that Litwinsky violated the restraining order.

Specifically, Litwinsky complains that the following should have been excluded from evidence at trial: the boilerplate language in the complaint for issuance of temporary restraining order,[5] Maki's handwritten statement contained in paragraph 5 of the complaint,[6] and references in the questionnaire attached to the complaint that indicate Litwinsky used alcohol and drugs and "had a past arrest or confinement history." Litwinsky's defense counsel did not object to the admission of these documents after the trial court redacted part of Maki's handwritten statement. The trial court did not give a limiting instruction when this evidence was admitted but did include a limiting instruction in its charge to the jury.

Litwinsky appealed his convictions on this issue, arguing the trial court erred by admitting this prior bad acts evidence as well as by failing to give a limiting instruction when the evidence was admitted. The Colorado Court of Appeals rejected Litwinsky's arguments on this issue, addressing only the trial court's failure to give a contemporaneous limiting instruction. The Court of Appeals ruled that a limiting instruction was "not required" because the information contained in the complaint and questionnaire constituted "res geste" evidence since it was "part and parcel of the crimes charged, and establishe[d] the context in which the crimes occurred." *People v. Litwinsky, supra,* slip op. at 3.

Under Colorado law, a trial court must engage in a four-part analysis in determining whether to admit evidence of prior bad acts under Colo.Rev.Evid. 404(b). *See People v. Spoto,* 795 P.2d 1314, 1318 (1990) *(en banc )*; *People v. Garner,* 806 P.2d 366, 373 (1991) *(en banc )*. If such evidence is admitted, the trial court must instruct the jury, pursuant to Colo.R.Evid. 105, on the limited purpose for which the evidence is admitted at the time it is admitted. *Garner, supra; see also Stull v. People,* 140 Colo. 278, 344 P.2d 455, 458 (1959). However, under Colorado law, if the evidence is part of the *res geste,* neither the evidentiary nor procedural requirements are applicable:

> Evidence of other offenses is admissible under certain circumstances. For example, such evidence may be an integral part of the criminal transaction with which the defendant is charged. It also may be needed for the fact finder to understand the context in which the alleged crime occurred. *People v. Manier,* 184 Colo. 44, 54, 518 P.2d 811, 817 (1974). "Criminal occurrences do not always take place on a sterile stage; and where, as here, the events leading up to

---

5. The third paragraph of the complaint is preprinted and states: "The Defendant has attacked, beaten, molested, or threatened the Plaintiff with serious bodily harm, and the Plaintiff fears for his/her safety and well-being and believes the Defendant will continue his/her actions unless he/she is restrained by the Court."

6. As stated above, the trial court redacted the first part of Maki's handwritten statement which included the allegation that Litwinsky had previously stolen her second car and robbed her apartment.

the crime are a part of the scenario which explain the setting in which it occurred, no error is committed by permitting the jury to view the criminal episode in the context in which it happened." *People v. Lobato,* 187 Colo. 285, 289–90, 530 P.2d 493, 496 (1975).

Evidence of other criminal conduct that occurs "contemporaneously with or is part and parcel of the crime charged is considered part of the *res geste* of that offense, and consequently is not subject either to the general rule that excludes evidence of prior criminality or to the procedural requirements of *Stull.*" *Callis v. People,* 692 P.2d 1045, 1051 n. 9 (Colo.1984) (emphasis in original). Such *res geste* evidence is admissible so long as it is relevant and its probative value is not substantially outweighed by the probability of unfair prejudice to the accused, *People v. Jackson,* 627 P.2d 741. *People v. Manier,* 184 Colo. at 52, 518 P.2d at 816.

*People v. Czemerynski,* 786 P.2d 1100, 1109 (1990) (en banc); *see also People v. Seacrist,* 874 P.2d 438, 442 (1993) (*Spoto* analysis and limiting instruction not applicable where evidence relevant to establish context of crime, even if such evidence indicates commission of unrelated offenses).

The United States Supreme Court has not specifically addressed the requirements of Rule 404(b) where evidence constitutes *res geste.* In this circuit, evidence of other bad acts has been deemed admissible to demonstrate the context of the crime. *See United States v. Viefhaus,* 168 F.3d 392, 397–98 (10th Cir.), *cert. denied,* 527 U.S. 1040, 119 S.Ct. 2402, 144 L.Ed.2d 801 (1999). "It is well settled that Rule 404(b) does not apply to other act evidence that is intrinsic to the crime charged, and that other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined." *United States v. O'Brien,* 131 F.3d 1428, 1432 (10th Cir. 1997).

In the instant case, copies of the restraining order and the complaint were found in Litwinsky's pocket when he was arrested. There is substantial evidence to suggest that Litwinsky confronted Maki at her apartment in response to having been served with these papers the night before. The jury could reasonably infer that the accusations of prior bad acts in these documents may have caused Litwinsky to confront, kidnap, rob, and assault Maki. It is clear that the complaints of prior bad acts were intertwined with, and explain the context of, the crimes committed by Litwinsky. The contents of the restraining order and complaint were also pertinent to the charge of violating the restraining order. Thus, I find that the decision of the Colorado Court of Appeals on this issue was not contrary to clearly established federal law. Nor did it involve a denial of federal constitutional rights. "State court rulings on the admissibility of evidence may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Brinlee v. Crisp,* 608 F.2d 839, 850 (10th Cir.1979) (*citing Gillihan v. Rodriguez,* 551 F.2d 1182, 1192–93 (10th Cir.)), *cert. denied,* 434 U.S. 845, 98 S.Ct. 148, 54 L.Ed.2d 111 (1977). Thus, Litwinsky's petition for habeas corpus relief is denied as to the issue of admission of prior bad acts evidence.

Based on the foregoing, IT IS ORDERED that Timothy Litwinsky's Petition for Writ of Habeas Corpus is GRANTED in part and DENIED in part. The general verdict used by the state trial court renders Litwinsky's conviction and sentence on the charge of third-degree assault unconstitutional. The state court is hereby ordered to VACATE Litwinsky's conviction for third-degree assault and the sentence imposed thereon, and to RECALCULATE the terms of Litwinsky's remaining sentence.