■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEN BROWN, Appellant. [743 NYS2d 477] —Judgment, Supreme Court, New York County (James Yates, J.), rendered June 21, 1999, convicting defendant, after a jury trial, of robbery in the second degree, reversed, on the law, and the matter remanded for a new trial.

Defendant's for-cause challenge of a prospective juror should have been granted. The challenged venire person, after informing the court that his apartment had been burglarized years earlier, stated that he could not pay attention to the case, and could not be a fair juror since he "come[s] from a law enforcement family." On further inquiry, he was asked by the court whether he could listen to witnesses and decide whether the prosecutor had proven defendant's guilt beyond a reasonable doubt: "No one is going to ask you to say do you like robbery or not like robbery. Everyone knows robbery is wrong and that it's bad. All we ask the jurors to do is to listen to the witnesses and then decide did the People prove beyond a reasonable doubt that he did that crime, or is there a doubt in you[r] mind, a reasonable one that he didn't do the crime. Can you do that?"

The juror responded "I don't know. I can't say." At that point, a serious question was raised as to whether this prospective juror had a state of mind which would "preclude him from rendering an impartial verdict based upon the evidence ad-

duced at the trial" (CPL 270.20 [1] [b]). The court was then obligated to either obtain an unequivocal assurance of impartiality or excuse him (*People v Arnold*, 96 NY2d 358, 363; *People v Blyden*, 55 NY2d 73, 78-79). Having raised a serious issue regarding his ability or willingness to apply the reasonable doubt standard, the prospective juror was not asked about his ability or willingness to follow the court's directions. The court asked him whether his strong feelings about law and order would cause him to "vote an innocent man guilty" to which he responded "[n]o."

When a prospective juror has serious doubt cast on her or his ability to render a fair verdict the trial court is obligated to determine if that individual can provide an unequivocal assertion of impartiality (*People v Chambers*, 97 NY2d 417; *People v Bludson*, 97 NY2d 644). Where, as here, a juror repeatedly evidences a predisposition towards the prosecution, cause exists for a challenge. Fairness cannot be measured by asking whether the venire person would do what no decent person would do, viz. convict an innocent person. This question also improperly posits the juror function as determining innocence. The specific problem with this prospective juror was his expressed uncertainty about applying the reasonable doubt burden of proof. When a question is raised regarding a prospective juror's ability to render an impartial verdict, it is still necessary that the prospective juror in unequivocal terms "must expressly state that his prior state of mind concerning either the case or either of the parties will not influence his verdict, and he must also state that he will render an impartial verdict based solely on the evidence" (*People v Biondo*, 41 NY2d 483, 485, *cert denied* 434 US 928). Although the trial judge is experienced and capable, he did not have this biased prospective juror state that he would render an impartial verdict based solely on the evidence.

The dissent is, of course, correct that we afford trial court determinations "due deference" when ascertaining whether a juror is actually biased or attempting to avoid jury service. On this record, however, there is no doubt that the prospective juror's express bias towards the prosecution stemmed from family relationships and personal experience. The bias expressed was not "abstract" as in *People v Williams* (63 NY2d 882, 884) and was repeatedly and unequivocally expressed. That the prospective juror also may have been attempting to avoid jury duty did not relieve the court of its obligation to obtain an unequivocal assurance once a serious issue had been raised regarding his ability to render an impartial verdict. The

question about convicting an innocent man put by the trial court was not reasonably calculated to reveal whether the prospective juror had a bias which would prevent him from reaching an impartial verdict (*People v Arnold*, 96 NY2d 358, 362; *see also, People v Chambers*, 97 NY2d 417). In reversing this conviction, we are not reimposing an expurgatory oath (*see, People v Blyden*, 55 NY2d 73, 77) and we are not imposing new restraints on trial courts. The Court of Appeals has long required that "[p]rospective jurors who make statements that cast serious doubt on their ability to render an impartial verdict, and who have given less-than-unequivocal assurances of impartiality, must be excused" (*People v Arnold*, 96 NY2d 358, 363 [citations omitted]). Despite the fact that the subsequent trial produced legally sufficient evidence of guilt and a verdict abundantly supported by the weight of evidence, we reverse and remand for a new trial. Concur—Tom, J.P., Buckley, Ellerin and Wallach, JJ.

Sullivan, J., dissents in a memorandum as follows: I disagree with the majority's conclusion that the challenge for cause with respect to the prospective juror in question should have been granted in the absence of an expurgatory oath. When this particular juror's statements are read in their entirety it is readily apparent that he was using a battery of excuses to avoid serving on the jury and trigger an excusal.

At the beginning of the jury selection, at a session with the court, counsel for both sides and defendant, out of the earshot of the other prospective jurors, the juror first presented himself as a two-time crime victim. After acknowledging that he had never reported either of these crimes, he abruptly abandoned that approach and announced that he "couldn't pay attention to the case." When the court asked, "You couldn't be a fair juror in the case?", the juror replied, "I don't think so?", noting that he came from a "law enforcement family also." As he explained, his father-in-law was a former chief medical examiner of the City of New York and his brother-in-law was the chief medical examiner in San Antonio. When the court pointed out that these relationships had nothing to do with defendant's guilt, the juror replied, "Well, I have my opinions already about law and order." The court then asked, "You have your opinion that he's guilty?" The juror responded, "I don't know, But * * *." The court pointed out, "You don't know until you hear the evidence, right?" The juror replied, "No, I didn't hear the evidence, but I have a strong feeling about law and order."

The court responded:

"I'm not sure what that means, because * * * Well, robbery is a crime. And Mr. Brown is charged with robbery.

"Everyone in this room knows that robbery is wrong * * * Mr. Brown agrees that robbery is wrong. I agree. You agree, the lawyers agree. We all agree that robbery is wrong.

"No one is going to ask you to say do you like robbery or not like robbery. Everyone knows robbery is wrong and that it's bad. All we ask the jurors to do is to listen to the witnesses and then decide did the People prove beyond a reasonable doubt that he did that crime, or is there a doubt in you[r] mind, a reasonable one that he didn't do the crime. Can you do that?"

The juror answered, "I don't know, I can't say." The court asked, "Do you think because you feel strong about law and order that you would vote an innocent man guilty?" The juror answered, "No, I feel strong about law and order. That's a fact." Concerned that this oft-repeated refrain was not carrying the day, the juror then added, "I should mention also that I didn't want to stay overnight in a hotel which would be difficult in my circumstances," explaining, "[M]y wife is a physician and she's on call at night. We have a babysitter during the day, but at night, they are seven and ten."

When jury selection continued the next day, in the presence of all the prospective jurors, the juror again mentioned that one relative was a retired New York City chief medical examiner and another a chief medical examiner in Texas. When asked if he would talk about the case to the former chief medical examiner, whom he saw "frequently," the juror replied, "Of course not. That was your instructions." None of the prospective jurors, including the juror in question, expressed any concern or dissatisfaction when defense counsel asked if they understood that they would have to find defendant not guilty if they concluded that the victim's testimony about the crime was mistaken. Nor did any of the panelists indicate that they could not do so when asked if they could promise to "keep an open mind throughout" the trial.

Given the potpourri of excuses offered by the juror in question, the experienced and capable trial judge, uniquely situated to observe the juror's demeanor and attitude, was entitled to consider whether the juror was expressing a genuine bias or merely attempting to escape jury service. In that regard, a trial judge's determination that a juror is capable of being fair and impartial should be accorded due deference on appeal. (*See, People v Williams*, 63 NY2d 882, 885.)

The standard governing challenges for cause is set forth in CPL 270.20 (1) (b), which, insofar as is here relevant, requires

a showing that a prospective juror "has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial." Where "potential jurors themselves openly state that they doubt their own ability to be impartial in the case at hand, there is far more than a *likelihood* of bias, and an unequivocal assurance of impartiality must be elicited." (*People v Johnson*, 94 NY2d 600, 614.) The court's obligation to extract a prospective juror's unequivocal assurance of impartiality, however, is triggered only by a "serious doubt," not by just any doubt, as to whether the juror is biased. (*See, People v Arnold*, 96 NY2d 358, 363.) The assurance of impartiality need only be given "in some form," not in any specified language. (*People v Johnson, supra* at 614.) In determining whether a prospective juror can serve impartially, the trial court must consider the "full record" before it, not mere "characterizations or snippets of the voir dire." (*Id.* at 615.)

In my view, the prospective juror's views on law and order, expressed in the abstract and asserted in an unmistakable effort to avoid jury service, did not raise a "serious doubt" regarding his ability to render an impartial verdict and did not trigger the obligation to elicit an unequivocal assurance of impartiality. (*See, People v Arnold, supra* at 362, 363.) The court's subsequent inquiry revealed that the proffered views would not induce him to be unfair. When asked whether he had an opinion as to defendant's guilt, the juror readily acknowledged that he "[didn't] know" if that were so. When the court pointed out that he could not know if defendant were guilty until he heard the evidence, the juror acknowledged that he had not, in fact, heard the evidence. And, although the juror expressed some doubt as to whether he could hold the People to their burden of proof, when the court, testing the sincerity of the excuse offered, put the question to him in the bluntest of terms, "Do you think because you feel strong about law and order that you would vote an innocent man guilty?", he unequivocally answered, "No."

The record, viewed as a whole, supports the trial court's determination that the juror, despite his strongly expressed reservations, uttered in scattergun fashion in a transparent effort to avoid jury service, could follow the court's instructions and judge the case on the evidence. In such circumstances, a special expurgatory assurance that bias would not interfere with the juror's service as a fair juror was not required.

The judgment should be affirmed.