**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Anthony Dean WILSON, Defendant–**
**Appellant.**

**No. 02CA0148.**

Colorado Court of Appeals,
Div. III.

June 17, 2004.

As Modified on Denial of Rehearing
March 10, 2005.

Certiorari Denied June 13, 2005.

Ken Salazar, Attorney General, Monica M. Marquez, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elisabeth Hunt White, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Anthony Dean Wilson, appeals the judgment of conviction entered on jury verdicts finding him guilty of (1) aggravated driving with a revoked license, (2) driving under the influence of alcohol, drugs, or both, (3) child abuse—threat of injury, (4) failure to use the required child restraint system, (5) failure to provide insurance, and (6) driving on the wrong side of the road. He also appeals his sentence. We vacate the judgment and sentence and remand for a new trial.

In February 2001, a gas station employee called the police to report that defendant's behavior suggested he was driving under the influence of alcohol. Police responded to the call and stopped defendant when he made an illegal U-turn. While defendant was pulled over, police officers noticed defendant's three-year-old daughter asleep in the front seat restrained by only a lap belt. They also found empty and unopened beer cans in the car. The officers testified that they could smell alcohol on defendant's breath, that he failed roadside sobriety tests, and that he refused to take a breath test.

Police arrested defendant for drunk driving. Defendant was convicted as charged, and this appeal followed.

### I. Challenge for Cause

Defendant asserts that the trial court committed reversible error by denying his challenge for cause to a prospective juror. We agree.

A fair trial is a basic requirement of due process, and the right to challenge a juror for cause is an integral part of a fair trial. *People v. Macrander,* 828 P.2d 234, 238 (Colo.1992). To ensure a defendant's right to a fair trial with an impartial jury, a trial court must excuse biased or prejudiced persons from the jury. *Morrison v. People,* 19 P.3d 668 (Colo.2000).

A trial court must grant a challenge for cause if a prospective juror is unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions. *Morrison v. People, supra.* This requirement is codified in § 16–10–103(1)(j), C.R.S.2003, which

states that courts must sustain challenges for cause where "[t]he existence of a state of mind in the juror evinc[es] enmity or bias toward the defendant or the state." *See also* Crim. P. 24(b)(1)(X).

■ We review a ruling on a challenge for cause to a prospective juror for abuse of discretion, giving deference to the trial court's assessment of the credibility of a prospective juror's responses. *Carrillo v. People*, 974 P.2d 478 (Colo.1999). However, despite the wide discretion accorded the trial court, *see People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (1976), appellate courts must not "abdicate their responsibility to ensure that the requirements of fairness are fulfilled." *Morgan v. People*, 624 P.2d 1331, 1332 (Colo.1981).

■ To determine whether a trial court abused its discretion in ruling on a challenge for cause, the entire voir dire of the prospective juror must be reviewed by the appellate court. *Carrillo v. People, supra.*

■ Reversible error occurs when a trial court does not grant a challenge for cause to a prospective juror who expresses doubt as to his or her ability to be impartial and is not rehabilitated by the prosecution or the trial court. *See People v. Luman*, 994 P.2d 432 (Colo.App.1999).

Prior to jury selection, each potential juror filled out a questionnaire. The questionnaires identified the charges against defendant and asked: "Do you believe there is any reason why you cannot be a fair and impartial juror in this criminal case?" To this question, the challenged prospective juror answered "yes," and explained that he was the sole supporter of his household, stating, "If I don't work I don't bring in any money."

During voir dire, the following exchange took place between the challenged prospective juror and the trial court:

The Court: Let me ask ... if there are any of you who believe that you have any substantial personal, business, or other hardship that would make it impossible for you to serve as a juror in this case? ... [The court addressed the challenged ju-

ror.] [L]et me start with you. What's your concern?

Prospective Juror: First off being self-employed and sole employer.

The Court: Okay.

Prospective Juror: If I don't work I don't get paid.

The Court: Okay.

Prospective Juror: I have no other comments.

Later in voir dire, the following exchange took place between defense counsel and the prospective juror:

Defense Counsel: Some of you have indicated there are circumstances in your background, family members who abused alcohol and things of that sort. I guess because time is limited I guess I'm just going to ask it this way. Is there anyone who feels those kinds of past experiences would affect them in sitting as jurors so that they could not be fair, knowing what the charges are? Anybody who's concerned about that as an issue?

. . . .

Prospective Juror: I'd say my daughter's mother who's no longer alive due to this could account for every one of the counts you've got there in your particular client. You can't count that high. You don't have enough fingers and toes.

Defense Counsel: How, if at all, would that affect you if you're on this jury?

Prospective Juror: Time element for me, number one, I've got to give credit for that. I have too many other outside responsibilities plus what I know on a background basis as I said, *somebody I was close to at one time in my life all those counts you've got on your client unfortunately she'd have it on [her], so in other words, it would kind of like get me on a narrow-minded basis.*

Defense Counsel: You think you would be less able to presume [defendant] innocent in this case just because—

Prospective Juror: *I would say he's got a strike against him because I've been around enough of it. I've been around too much of it.*

Defense Counsel: All right, sir. I think my time is up. I do have one challenge for cause, Your Honor.

The Court: Okay. And that is?

Defense Counsel: [The prospective juror].

(Emphasis added.)

The following conference then took place at the bench:

The Court: Okay. We're at the bench and a challenge for cause is made. The Court is going to deny the challenge, and the reason I'm doing that that I didn't want to say in front of the jurors is that *it is pretty apparent to the Court that the juror's reason for saying what he's saying is because he doesn't want to be here. He's got other concerns business in nature that are taking his time, and while the Court recognizes the answer that he's given, the Court doesn't accept it.*

*I do not find that he has expressed himself in a way that establishes to this Court that he could not be a fair and impartial juror,* and accordingly, I'll deny the request to challenge.

The Prosecution: If I may say on the record, none of the answers he gave were anywhere on his questionnaire and the charges are listed on the questionnaire. So reason and common sense said he would have put them down if that was true.

Defense Counsel: Judge, my feeling is that's the purpose of voir dire, that the questionnaires are not all inclusive. I do feel that the Court has to accept his sworn answers as reflective of his feelings.

*He may have more than one reason that he doesn't want to serve, but if he cannot presume [defendant] to be innocent or if he has concerns about that which are serious enough to say that he feels my client has one strike against him, I think that's sufficient grounds.*

The Court: Okay. All right. Record is made.

(Emphasis added.)

Having reviewed the entire voir dire, we conclude that the trial court abused its discretion in denying defendant's challenge for cause. Although the challenged prospective juror clearly indicated his work-related concerns about serving as a juror, he also stated that because of the prospective juror's exposure to alcohol abuse, defendant had one strike against him. During the entire voir dire process, neither the court nor the prosecution elicited a statement from the prospective juror that he could render or would try to render an impartial verdict according to the law and evidence, that he would apply the facts to the law and follow the instructions of the court, or that he would presume defendant innocent until proved guilty.

The facts of this case are similar to those in *People v. Luman, supra.* There, a prospective juror expressed doubt that she could be fair. Thereafter, she was not rehabilitated by the court or the prosecution and at no time stated on the record that she could be fair or impartial. A division of this court concluded that, however compelling the prospective juror's demeanor, nothing in the record supported the trial court's denial of the challenge for cause.

Similarly, here, there is no support in the record for a conclusion that the challenged prospective juror could be fair and impartial.

We recognize that two Colorado cases have suggested that it is appropriate for a trial court to consider a juror's interest in avoiding jury service when ruling on a challenge for cause. *See McGonigal v. People,* 74 Colo. 270, 220 P. 1003 (1923); *Young v. Carpenter,* 694 P.2d 861 (Colo.App.1984). We conclude those cases are distinguishable.

In *McGonigal,* the supreme court stated: A juror who admits an opinion on the merits does not bind the court by his assertion that he can or cannot disregard it. The trial judge may very properly be convinced that the juror is seeking or avoiding service, or that he magnifies or minimizes his ability, or that his conscience is exceptionally tender or callous. In such a case the court's ruling on a challenge for cause will not be disturbed unless prejudice or abuse of discretion appears.

*McGonigal v. People, supra,* 74 Colo. at 272, 220 P. at 1004. There, the supreme court noted that the four jurors challenged for cause had expressed some opinions of the

guilt or innocence of the defendant, but each declared that he could and would disregard that opinion and return a verdict based solely on the evidence. Thus, to the extent the language quoted above referred to prospective jurors seeking to avoid jury service, it was dictum, and it is not binding on us.

In *Young v. Carpenter, supra,* a division of this court concluded that the trial court did not abuse its discretion in denying a challenge for cause to a prospective juror who had expressed bias or partiality. In that case, the division concluded that the trial court could properly consider the prospective juror's statements that she was seeking to avoid jury service to take a previously scheduled vacation. In *Young,* however, the opinion does not indicate whether the trial court made any effort to obtain assurances from the prospective juror that she would render an impartial verdict based solely upon the evidence and instructions of the court. *See People v. Russo,* 713 P.2d 356 (Colo.1986); *cf. People v. Vecchiarelli–McLaughlin,* 984 P.2d 72 (Colo.1999)(although prospective juror may have displayed preconceived opinion that defendants in general should testify in their own defense, he later confirmed that he would not use the defendant's decision not to testify as evidence of his guilt, and therefore trial court properly denied defendant's challenge for cause).

We conclude that a trial court may not deny a defendant's challenge for cause to a prospective juror who has expressed bias based solely upon its belief that the prospective juror is merely seeking to avoid jury service. A trial court must receive some assurance from a prospective juror that he or she is willing and able to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions. *Morrison v. People, supra.* Otherwise, a prospective juror who seeks to avoid jury service because of work-related concerns or a planned vacation may nevertheless serve on a jury although he or she is biased against the defendant.

Thus, while it is appropriate for a trial court to consider whether a prospective juror is seeking to avoid jury service when considering a challenge for cause, that basis, standing alone, is insufficient when a prospective juror makes a clear statement of bias.

Here, the trial court's determination that the prospective juror was seeking to avoid jury service was insufficient to overcome his unambiguous response that defendant would have "a strike against him." Accordingly, we conclude that the trial court abused its discretion in denying defendant's challenge for cause.

Our conclusion is consistent with the holdings of courts in other jurisdictions. *See Commonwealth v. Long,* 419 Mass. 798, 647 N.E.2d 1162 (1995)(better to excuse potential jurors who allege biases that may be pretext for avoiding jury service than to insist that such potential jurors serve on jury in criminal case); *People v. Brown,* 295 A.D.2d 184, 743 N.Y.S.2d 477 (2002)(court must assure that prospective juror can render a fair and impartial verdict before denying challenge for cause although trial court believes prospective juror is attempting to avoid jury service).

Further, in so holding, we are mindful of the difficulties that trial courts encounter in empaneling juries. *See* Paul W. Rebein et al., *Jury (Dis)service: Why People Avoid Jury Duty and What Florida Can Do About It,* 28 Nova L.Rev. 143 (2003)(*Jury (Dis)service* ); Nancy J. King, *Juror Delinquency in Criminal Trials in America, 1796–1996,* 94 Mich. L.Rev. 2673 (1996)(*Juror Delinquency*). We are aware of the diverse excuses potential jurors may give to avoid service and, therefore, give great deference to the trial court to determine credibility. However, when weighing these difficulties against a defendant's constitutional right to an impartial jury, we conclude that the balance must be struck in favor of the defendant.

Thus, although a trial court believes a prospective juror seeks to avoid jury service, it must nevertheless determine whether he or she has stated that he or she could or would try to render an impartial verdict according to the law and the evidence and would follow the court's instructions. If not, the court must (1) ask follow-up questions and be assured the prospective juror will render a fair

and impartial verdict based upon the trial evidence and the court's instructions or (2) excuse the individual. This approach is consistent with the responses of 562 trial judges across the country to a 1995 survey, most of whom said that when they were convinced a prospective juror had been dishonest, they dismissed him or her. *See Juror Delinquency, supra.*

Additionally, courts in other jurisdictions have taken other ,steps against prospective jurors who apparently lied to avoid jury service, including threatening or imposing contempt sanctions. *See Gruss v. State,* 869 So.2d 770 (Fla.Dist.Ct.App.2004); *Jury (Dis)service, supra; Juror Delinquency, supra.* In addition, judges in other jurisdictions have dealt with deceitful veniremembers by demanding that they sit through an entire trial as observers, denying them their juror fee, or ordering them resubpoenaed for service. *See Juror Delinquency, supra,* at 2705.

The People cite *Carrillo v. People, supra,* in support of their argument that the trial court did not abuse its discretion. In *Carrillo,* the supreme court upheld the trial court's denial of a challenge for cause where the prospective juror made ambiguous and conflicting statements about his ability to be impartial, but was rehabilitated by the prosecution. The supreme court concluded that "although it would have been better practice for the trial judge to question [the prospective juror] in order to fully explore his feelings, we do not find that the record of [his] answers taken as a whole demonstrates that he had a state of mind evincing bias against Carrillo." *Carrillo v. People, supra,* 974 P.2d at 488.

However, here, unlike in *Carrillo,* the prospective juror did not make ambiguous and conflicting statements about his ability to be impartial. The prospective juror stated unequivocally that defendant had "a strike against him," a statement that the court simply disbelieved. Moreover, unlike in *Carrillo,* here the prosecutor did not rehabilitate the prospective juror.

Challenges for cause would be futile if the trial court could simply disregard a prospective juror's statements of partiality without any evidence in the record that the prospective juror would try to be fair. Further, although a trial court is granted broad discretion in such cases, appellate review would be rendered meaningless if that discretion were so broad that the trial court's ruling need not have a basis in the record. Therefore, we conclude the trial court abused its discretion, the judgment and sentence must be vacated, and the case must be remanded for a new trial.

## II. Aggravated Driving After Revocation Charge

■ Next, defendant contends that the information did not charge him with an aggravating factor and therefore his conviction for aggravated driving with a revoked license was improper. We agree.

### A. Sufficiency of the Information

■ An information is sufficient if it advises the defendant of the charges brought so that the defendant can present an adequate defense and be protected from further prosecution for the same offense. *People v. Moore,* 200 Colo. 481, 615 P.2d 726 (1980). Section 16-5-202(1)(d), C.R.S. 2003, and Crim. P. 7(b)(2) require that an information set forth the offense charged with such degree of certainty that the court may pronounce judgment on a conviction.

Colorado has followed the modern trend of testing the sufficiency of the information based upon the fundamental objectives the information serves rather than technical pleading requirements of the common law. *People v. Williams,* 984 P.2d 56 (Colo.1999).

■ In determining the sufficiency of a particular count alleged in an information, we must restrict our examination to the four corners of that count to make sure that the essential elements of a crime were alleged therein directly or incorporated by specific reference, and we must not allow a defect in one count to be cured by averments in another count. *People v. Williams, supra.*

■ An information that fails to charge an essential element of an offense is substantively defective. Generally, it is suffi-

cient that the information track the language of the statute itself, as long as those words fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. *People v. Williams, supra.*

Section 42–2–206(1)(a)(I), C.R.S.2003, provides:

It is unlawful for any person to operate any motor vehicle in this state while the revocation of the department prohibiting the operation remains in effect. Any person found to be an habitual offender, who operates a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect, commits a *class 1 misdemeanor.*

(Emphasis added.)

Section 42–2–206(1)(b), C.R.S.2003, provides:

(I) *A person commits the crime of aggravated driving with a revoked license* if he or she is found to be an habitual offender and thereafter operates a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect and, as a part of the same criminal episode, also commits any of the following offenses:

(A) *Driving under the influence,* as described in section 42–4–1301(1)(a)

. . . .

(II) Aggravated driving with a revoked license is a *class 6 felony,* punishable as provided in section 18–1.3–401, C.R.S.

(Emphasis added.)

Count one of the information charged defendant as follows:

[Defendant] did unlawfully and feloniously operate and drive a motor vehicle upon a highway at a time when his drivers license and right and privilege to drive a motor vehicle in this state was revoked pursuant to the habitual offender statute, as set forth in C.R.S. 42–2–203; in violation of Section 42–2–206(1)(b)(I), C.R.S.; AGGRAVATED DRIVING WITH A REVOKED LICENSE; (a Class Six Felony).

Although count one was entitled "aggravated driving with a revoked license," it did not allege an aggravating element. Therefore, count one did not allege an essential element of the crime and was substantively defective. Count one was insufficient to notify defendant as to which aggravating offense the state intended to prove to convict him of this felony.

Count two of the information separately charged defendant with driving under the influence of alcohol, drugs, or both, in violation of § 42–4–1301(1)(a), C.R.S.2003. However, count one did not reference or incorporate count two. Therefore, we may not consider the contents of count two in determining the sufficiency of count one. *See People v. Williams, supra.*

■ Further, we reject the People's argument that the aggravating offenses found in § 42–2–206(1)(b) are not elements of the crime, but are merely sentence enhancers.

■ Although a sentence enhancer is similar to an essential element of an offense in that a defendant may not be sentenced at the higher level unless the enhancing factor is proved beyond a reasonable doubt, a sentence enhancement provision is not an element of the offense charged. When there is a sentence enhancer, a defendant may be convicted of the underlying offense without any proof of the sentence enhancer. However, when an offense does not include a sentence enhancer, each element of the offense must be proved beyond a reasonable doubt. *Armintrout v. People,* 864 P.2d 576, 580 (Colo.1993).

Here, § 42–2–206(1)(b) clearly sets forth the elements of the crime of aggravated driving with a revoked license, which include six different offenses committed "as part of the same criminal episode." Thus, the aggravating offenses listed in § 42–2–206(1)(b) are essential elements of the crime.

As stated above, count one of the information did not contain an aggravating element, and, therefore, it was insufficient to charge defendant with the crime of aggravated driving with a revoked license.

## B. Double Jeopardy

■ We conclude that defendant may be charged again with aggravated driving with a revoked license without violating his right to be free from double jeopardy.

■ The Double Jeopardy Clauses of the United States and Colorado Constitutions protect a defendant from successive prosecutions. *Deutschendorf v. People*, 920 P.2d 53 (Colo. 1996). However, the Double Jeopardy Clause "does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction." *U.S. v. Tateo*, 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). Accordingly, the State is not foreclosed from retrying a defendant when a conviction is reversed based upon a defective charging document. *Montana v. Hall*, 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987); *State v. Vangerpen*, 888 P.2d 1177 (Wash. 1995).

In *People v. Garner*, 187 Colo. 294, 530 P.2d 496 (1975), the supreme court permitted the retrial of the defendant where, after the first trial, the conviction was set aside because the information was insufficient to charge the defendant with a crime. The court determined that jeopardy had not yet attached because the information was "insufficient in form and substance to sustain a conviction." *Garner*, supra, 187 Colo. at 298, 530 P.2d at 499.

While *Garner* provides guidance, this case involves slightly different circumstances. Although the information in this case did not properly charge defendant with aggravated driving with a revoked license, it was sufficient to charge defendant with the lesser offense of driving without a license. That is different from *Garner*, where the information did not charge any crime. Consequently, *Garner* did not address the issue of the appropriate remedy for the circumstances here, where a conviction could be sustained upon a lesser offense that was sufficiently charged in the information.

However, the court in *Vangerpen* addressed this issue, and held that double jeopardy does not apply and thus the state could refile corrected charges if it so choose. *Vangerpen, supra.*

Based on *Vangerpen*, we conclude that the appropriate remedy here is to remand to the trial court, where the People may refile a charge against defendant for aggravated driving with a revoked license if they choose.

Because we vacate the judgment and sentence, we do not address defendant's arguments regarding his sentence. We note, however, that the parties agree that defendant was erroneously sentenced to jail for his conviction of driving on the wrong side of the road, a traffic infraction that provides for a maximum penalty of a $100 fine, and that the same conviction was mistakenly entered on the mittimus as a speeding violation. If defendant is tried and convicted again, these errors are to be corrected on retrial.

Accordingly, the judgment and sentence are vacated, and the case is remanded for a new trial.

Judge DAILEY and Judge GRAHAM concur.