**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**James Edward LUCAS, Defendant–Appellant.**

No. 05CA1621.

Colorado Court of Appeals, Div. II.

June 25, 2009.

As Modified on Denial of Rehearing Aug. 6, 2009.

158

John W. Suthers, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Sarah Burtis, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, James Edward Lucas, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree burglary, third degree assault, menacing, second degree criminal tampering, and first degree criminal trespass. He asserts that the trial court erred by (1) failing to suppress statements he made to police, (2) wrongly instructing the jury on the law regarding voluntary intoxication, (3) denying several of his challenges for cause during jury selection, (4) allowing the prosecution to make improper comments in closing argument, and (5) unconstitutionally subjecting him to double jeopardy. We disagree and therefore affirm.

## I. Factual Background

Defendant spent the evening and early morning before his arrest drinking with friends at various clubs, bars, and restaurants. He drove home after closing time and upon arrival noticed that his neighbor, the victim in this case, had left her garage door open.

Defendant went to his own home, changed into black clothing, a ski mask, and gloves, and obtained a pocket knife. He then entered the victim's house, moved some things about, shut off her electrical breakers, and let the air out of one of her car's tires.

At some point defendant climbed the victim's stairs inside her house. The victim awoke, screamed at him to leave, and then chased him out of her house. The victim chased defendant until he was at the end of the driveway. Defendant then turned, ran toward the victim, and hit her on the side of the head with a knife in his hand.

The victim called the police, who approached defendant's home at approximately 5:30 a.m. that morning as part of a neighborhood sweep. While inside defendant's home, they noticed drops of blood in various locations and a cut on defendant's hand. The police arrested defendant and transported him to the stationhouse.

The police interviewed defendant twice on the day of his arrest. The officer conducting the first interview did not inform defendant of his rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant made vague but incriminating statements during the first interview. Initially he stated that he remembered nothing about his activities the previous night, but later said it was possible that he had "done it" and he was "scared that he might have done it."

Approximately an hour later, a second officer delivered the *Miranda* warnings, conducted a second interview, and obtained a detailed confession from defendant.

Before trial, defendant sought to suppress his statements from both interviews. The trial court ruled that the initial interview was conducted in violation of *Miranda*, and that defendant's statements therein would not be admitted into evidence. However, the court found the second interview—including defendant's detailed confession—was admissible.

After trial, the jury found defendant guilty as previously noted. The trial court entered judgment and sentenced defendant to twenty-four years in the custody of the Department of Corrections for the burglary charge. It also imposed lesser sentences for the other offenses and set them to run concurrently. This appeal ensued.

## II. Suppression of Defendant's Statements

Defendant contends that the trial court erred by denying his motion to suppress the statements he made during his second interview at the police station because the *Miranda* warnings issued by the interrogating officer were ineffective. We disagree.

### A. Standard of Review

A trial court's ruling on a motion to suppress presents a mixed question of fact and law. *People v. Medina*, 25 P.3d 1216, 1223 (Colo.2001). We review questions of law de novo, while deferring to a trial court's findings of fact if supported by competent evidence. *Id.* However, where, as here, the statements sought to be suppressed are video-recorded, and there are no relevant disputed facts outside of the recording, we are in a position similar to that of the trial court to determine whether the statements should have been suppressed. *People v. Madrid*, 179 P.3d 1010, 1014 (Colo.2008).

### B. Preservation of the Issue

Initially we conclude, contrary to the People's contention, that defendant adequately preserved his objection because he moved to suppress the statements made at the police station and argued that the statements were not voluntary. In addition, defense counsel argued that the post-*Miranda* statements should be excluded because they were tainted by the earlier interrogation.

Moreover, even though the trial court did not have the benefit of the *Missouri v. Seibert* decision, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), and therefore made no findings concerning the factors identified

in *Seibert,* as previously noted we are essentially reviewing de novo because the statements are video-recorded and there are no disputed facts concerning the circumstances surrounding the statements. Accordingly, a remand for further findings is not required.

### C. Applicable Law

■ The Fifth Amendment grants every citizen the right not to be "compelled, in any criminal case, to be a witness against himself." To protect this right, law enforcement officers must inform a person in their custody—prior to interrogation—that he has "a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. These warnings serve to ensure that a person has sufficient knowledge of his constitutional rights, and that any waiver of those rights is made voluntarily, knowingly, and intelligently. *Id.* at 467, 475, 86 S.Ct. 1602.

Certain interrogation techniques can render the *Miranda* warnings ineffective for purposes of advising suspects of their constitutional rights. In *Seibert,* 542 U.S. at 604–05, 124 S.Ct. 2601, decided two months after the trial court's suppression ruling here, the Supreme Court considered a method of questioning by which police deliberately withheld *Miranda* warnings before an initial interview, extracted a confession during that interview, and then gave the suspect a brief break. Upon resumption of questioning, the police administered the warnings, obtained a waiver, and then extracted a second confession covering essentially the same information. *Id.* at 605, 124 S.Ct. 2601.

The Court found that in the circumstances of that case, it was "likely that if the interrogators employ the technique of withholding warnings until after interrogation succeeds in eliciting a confession, the warnings will be ineffective in preparing the suspect for successive interrogation, close in time and similar in content." *Id.* at 613, 124 S.Ct. 2601. When *Miranda* warnings are inserted in the midst of a continuing interrogation, they are likely to deprive a defendant of the knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them. *Id.* at 613–14, 124 S.Ct. 2601.

■ A plurality of the *Seibert* Court established a five-factor analysis to be used in determining whether *Miranda* warnings provided after an initial interrogation are effective. *Id.* at 615, 124 S.Ct. 2601. These factors include (1) the completeness and detail of the questions and answers in the first round of interrogation, (2) the overlapping content of the two statements, (3) the timing and setting of the first and second interrogations, (4) the continuity of police personnel, and (5) the degree to which the interrogator's questions treat the second round as continuous with the first. *Id.*

Justice Kennedy concurred, but stated his preference for the analysis of *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). That case held that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, does not necessarily taint a subsequent warned confession. *Id.* at 318, 105 S.Ct. 1285. The relevant inquiry under *Elstad* is whether the initial unwarned and subsequent warned confessions were voluntary. *Id.* Justice Kennedy would break from this analysis only where the police have deliberately employed a "two-step strategy" and withheld *Miranda* warnings until after an initial confession has been obtained. *Seibert,* 542 U.S. at 622, 124 S.Ct. 2601. His analysis in the concurrence thus requires an inquiry into the subjective intent of the interrogating officer. *State v. Fleurie,* 968 A.2d 326, 332 (Vt.2008).

It is unclear whether the plurality's approach or Justice Kennedy's will dominate future jurisprudence. *But cf. Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the 'holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.' " (quoting *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49

L.Ed.2d 859 (1976))). However, as explained below, we conclude that under either approach, the trial court did not err in admitting defendant's second stationhouse interview.

### D. Analysis Under the *Seibert* Plurality Approach

■ Under the *Seibert* plurality approach, we conclude that the *Miranda* warnings delivered to defendant at the start of his second stationhouse interview were effective in accomplishing their object.

The first of the five *Seibert* factors calls upon us to analyze the "completeness and detail of the questions and answers in the first round of interrogation." *Seibert*, 542 U.S. at 615, 124 S.Ct. 2601.

Here, the first police interviewer's questions to defendant covered the entire relevant timeframe, from when defendant initially went out with his friends to when he was arrested by police. This interview also involved a number of questions about defendant's possible motivations for being in the victim's home. However, defendant's answers to the interviewer's questions were far from complete. He maintained throughout the first interview that although he was afraid he might have been involved, he had consumed so much alcohol that he had no clear memories between leaving the last bar he visited and being awakened at his home after police had arrived. The first *Seibert* factor is thus inconclusive as to whether the second interviewing officer's *Miranda* warnings could have effectively apprised defendant of his rights.

The second *Seibert* factor concerns the overlapping content of a defendant's two statements. *Seibert*, 542 U.S. at 615, 124 S.Ct. 2601. As explained above, there was very little overlap between the information defendant provided to police in his first and second interviews. In the first interview defendant maintained that he could not remember what happened, whereas in the second he provided a detailed account of his activities. Although defendant inculpated himself somewhat prior to the warning, he did not truly explain what happened until after the warning was delivered. Thus, this factor weighs heavily in favor of the effectiveness of the *Miranda* warning.

The third factor concerns the timing and settings of the first and second interviews. *Seibert*, 542 U.S. at 615, 124 S.Ct. 2601. Here, the second interview began approximately one hour after the first concluded and took place in the same room. Between the two interviews defendant was escorted to a bathroom, was visited by two different teams of personnel to collect blood and hair samples, and was left alone in the interview room for an appreciable length of time.

We recognize the risk that if a first and a second interview are close enough in time and place, the defendant may believe that the second is merely a continuation of the first, and a mid-stream injection of *Miranda* warnings will serve no actual purpose. However, in this case we conclude that there was a sufficient break such that defendant should not have reached that conclusion. The two interviews were sufficiently disjointed to indeed be *two* interviews, not one continuous interrogation broken only by an ineffective advisement of rights.

The fourth *Seibert* factor concerns the continuity of police personnel. *Seibert*, 542 U.S. at 615, 124 S.Ct. 2601. Here, two different police officers conducted the two interviews. This factor thus weighs in favor of the effectiveness of the *Miranda* warnings defendant received.

The final *Seibert* factor concerns the "degree to which the interrogator's questions treated the second round as continuous with the first." *Seibert*, 542 U.S. at 615, 124 S.Ct. 2601. Here, the second interrogator made only oblique references to the initial interview, stating that he had reviewed the evidence and had spoken with the first interrogator. But at no time did the interviewer present defendant with one of his earlier statements and ask him to repeat or elaborate upon it.

In sum, we perceive that the second interview was not a continuation of the first, and that defendant's choice not to assert his right to remain silent was not a product of ineffective *Miranda* warnings. We thus conclude that under the *Seibert* plurality approach, the

*Miranda* warnings administered to defendant before his second interview were effective. Hence, the statements he made during that interview were properly admitted in the prosecution's case against him.

### E. *Seibert* Concurrence Approach

■ Justice Kennedy's approach to determining the admissibility of statements made in a two-stage interrogation turns in part upon the subjective intent of the officer conducting the interview. *Seibert,* 542 U.S. at 622, 124 S.Ct. 2601. Unlike in *Seibert,* here there is no clear indication that the police employed their chosen interrogation technique in a deliberate effort to undermine *Miranda.* Thus, Justice Kennedy would apply the admissibility analysis prescribed in *Oregon v. Elstad. Id.*

The *Elstad* analysis focuses on the voluntary nature of the initial unwarned and subsequent warned statements. 470 U.S. at 318, 105 S.Ct. 1285. Here, although defendant argued in the trial court that his initial statement was involuntary, this argument is not repeated on appeal. Our review of defendant's interrogations has provided us with no indication that defendant's initial statement, though in violation of *Miranda,* was coerced from him. The first interrogator's voice and tone were conversational, and defendant was neither threatened nor placed in an environment more uncomfortable than that inherently associated with police custody. The same applies to the second, post-*Miranda* interview.

We thus conclude that defendant's second stationhouse statement to police was admissible under both the *Seibert* plurality approach and that presented by the concurrence. Consequently, we reject defendant's contention that the trial court erred by failing to suppress his post-*Miranda* statements.

### III. Jury Instructions Regarding Voluntary Intoxication

■ Defendant contends that the voluntary intoxication instruction given to the jury relieved the prosecution of its burden of proof by allowing the jury to disregard evidence of intoxication. We disagree.

### A. Standard of Review

Trial courts have a duty to correctly instruct juries on all matters of law. *People v. Garcia,* 28 P.3d 340, 343 (Colo.2001). We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law. *Fishman v. Kotts,* 179 P.3d 232, 235 (Colo. App.2007).

### B. Applicable Law

■ The Due Process Clause requires the prosecution to prove each element of an offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This includes proving the mens rea element. *Hendershott v. People,* 653 P.2d 385, 393 (Colo.1982).

■ Colorado statutes allow juries to consider evidence of a defendant's voluntary intoxication when it "is relevant to negative the existence of a specific intent if such intent is an element of the crime charged." § 18–1–804(1), C.R.S.2008. Voluntary intoxication is not an affirmative defense. *People v. Harlan,* 8 P.3d 448, 470 (Colo.2000). Rather, "the statute sets forth a rule concerning the admissibility of evidence of intoxication by the defendant to counter the prosecution's evidence that the defendant had the requisite specific intent of the charged offense." *Id.* at 470–71. Thus, the statute "absolves a defendant of liability only for a specific intent offense when the evidence of intoxication negates the existence of the specific intent." *Id.* at 471.

### C. Application

■ Here, the prosecution charged defendant with the specific intent crimes of first degree burglary, § 18–4–202(1), C.R.S. 2008; second degree criminal tampering, § 18–4–506, C.R.S.2008; and second degree assault by means of a deadly weapon, § 18–3–203(1)(g), C.R.S.2008. At trial, defendant's theory of defense was that he was too intoxicated to form the requisite level of mental intent to have committed those crimes. He requested that the jury be instructed as follows:

You have heard evidence that [defendant] was intoxicated at the time of these acts. You must consider this evidence of self-induced intoxication in determining whether the state has met its burden of proving all of the elements of the charged offenses beyond a reasonable doubt, including whether [defendant] was acting with the culpable mental state of "with intent" as that term is defined in instruction number _____. Evidence of self-induced intoxication is relevant to determining whether the state has met its burden of proving a defendant's actions were intentional. Because the evidence here has raised the issue of self-induced intoxication, the state has the burden of proving beyond a reasonable doubt that [defendant] was not so intoxicated at the time of these offenses that he did not act with intent and/or after deliberation.

The trial court rejected defendant's requested instruction, but provided the jury the following instruction relating to voluntary intoxication:

You may consider evidence of self-induced intoxication in determining whether or not such intoxication negates the existence of the element of "with intent" or "intentionally."

The prosecution has the burden of proving all the elements of the crimes charged beyond a reasonable doubt. If you find the defendant was intoxicated to such a degree that he did not have the mental state of "with intent" or "intentionally," which is a required element of the crimes of FIRST DEGREE BURGLARY; SECOND DEGREE CRIMINAL TAMPERING; and ASSAULT IN THE SECOND DEGREE (BY MEANS OF A DEADLY WEAPON), you should find the defendant not guilty of those charges.

Defendant argues that because the trial court instructed the jury that it "may"—rather than must—consider voluntary intoxication, the prosecution was not required to prove beyond a reasonable doubt that he possessed the required mental state. We do not discern a meaningful difference between the instruction defendant requested and the one ultimately provided to the jury. A divi-

sion of this court has previously held that instructions informing a jury that it "may" consider evidence of voluntary intoxication are not erroneous. *People v. Rosales,* 134 P.3d 429, 433–34 (Colo.App.2005). The jurors in this case were called upon to decide whether defendant possessed a required mental state, and to determine whether his intoxication negated that mental state. As in *Rosales,* the jury instructions here did not imply that the prosecution had been relieved of any burden to prove defendant's mental state.

Instead, the complained-of instruction itself states that the prosecution is required to prove all of the elements of the charged crimes beyond a reasonable doubt. The same admonition is included and elaborated upon in a general instruction: "If you find from the evidence that the People have failed to prove any one or more of the elements of any count beyond a reasonable doubt, you will find the defendant not guilty as to that count." Additionally, a separate instruction informed the jury that the "culpable mental state is as much an element of the crime as the act itself and must be proven beyond a reasonable doubt, either by direct or circumstantial evidence." The jury was further reminded of the prosecution's burden in each of the instructions pertaining to the individual charged offenses.

Defendant also argues that the trial court's instructions left the jury free to disregard the evidence of intoxication. However, the jury in this case was clearly instructed to consider all of the evidence when evaluating the case against defendant. We presume that the jury did so. *See Harlan,* 8 P.3d at 473. After considering the intoxication evidence, it was within the province of the jury either to credit that evidence or to disregard it. *See People v. McIntier,* 134 P.3d 467, 471 (Colo.App.2005) ("[I]t is the fact finder's function in a criminal case to consider and determine what weight should be given to all parts of the evidence and to resolve conflicts, testimonial inconsistencies, and disputes in the evidence.").

We conclude that the jury instructions as a whole adequately informed the jury of the applicable law and did not remove the prose-

cution's burden to prove defendant's mental state beyond a reasonable doubt. Consequently, we reject defendant's contention that the trial court's jury instructions were erroneous.

### IV. Challenges for Cause

Defendant contends that the trial court abused its discretion when it denied his challenges for cause to five prospective jurors. We disagree.

### A. Standard of Review

We review a trial court's ruling on a challenge for cause for abuse of discretion, and consider the entire voir dire of the prospective juror. *Carrillo v. People,* 974 P.2d 478, 485–86 (Colo.1999). We will overturn the trial court's resolution of a challenge for cause only if the record presents no basis for it. *Harlan,* 8 P.3d at 462.

### B. Applicable Law

Trial courts must ensure a defendant's right to a fair trial by excusing biased or prejudiced persons from the jury. *People v. Wilson,* 114 P.3d 19, 21 (Colo.App.2004). "A trial court must grant a challenge for cause if a prospective juror is unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions." *Id.*

Colorado statutes provide that courts must sustain a challenge for cause if a prospective juror exhibits a state of mind "evincing enmity or bias toward the defendant or the state." § 16–10–103(1)(j), C.R.S.2008.

### C. Application to Potential Jurors L and B1

Defendant first argues that potential jurors L and B1 indicated bias during voir dire and were not rehabilitated. We disagree that these jurors indicated such bias that they were incapable of rendering an impartial verdict.

L explained that she had been in a violent marriage where alcohol was a factor, and that some of the subject matter of voir dire had brought up difficult emotions for her.

Defendant challenged her for cause. When denying the challenge, the trial court explained that the juror's emotions were tied to domestic violence, and this was not a domestic violence case. The trial court's perception finds support in the voir dire transcript, and we find no fault in its exercise of discretion.

B1 stated that he would not be comfortable considering alcohol when determining defendant's mental state. The transcript of his voir dire is confusing at best, but also seems to indicate that he had a strong bias against somehow excusing behavior because of alcohol consumption.

However—as the trial court stated when denying defendant's challenge for cause—B1 stated that he would do his best to follow the law. In regard to considering evidence of intoxication, B1 stated, "I'm not comfortable with that, but I would take my orders from the judge."

B1's statements provide support for the trial court's determination that B1 would apply the law as instructed by the court to the evidence presented at trial. The presence of that support distinguishes his voir dire testimony from that addressed in *People v. Wilson,* 114 P.3d at 22. In *Wilson,* a prospective juror indicated that the defendant would have a "strike against him," and never stated a willingness to follow the law. *Id.* Consequently, a division of this court held that the trial court's denial of the defendant's challenge for cause amounted to an abuse of its discretion. *Id.* at 25. In this case, however, although B1 indicated he might struggle with the court's instructions, he stated a desire and intent to follow them. Consequently, we cannot say that the trial court abused its discretion by refusing defendant's challenge for cause.

### D. Application to Potential Jurors B2 and V, and Juror F

Defendant argues that prospective jurors B2 and V, as well as juror F, illustrated bias toward him and were not adequately rehabilitated.

The record reflects that each of these three individuals indicated some negative

feelings associated with alcohol consumption. However, following the attorneys' voir dire, the trial court asked each of them whether he or she would apply the law as provided by the court to the facts as he or she determined them to be. Each of the three responded affirmatively. Thus, the record contains support for the trial court's decision that they were capable of appropriately applying the law to the facts.

In sum, we find no reason to overturn the trial court's exercise of its discretion in denying defendant's challenge to any of the five jurors in question.

## V. Prosecutorial Misconduct

Defendant contends that the prosecution's improper comments during closing argument deprived him of his right to a fair trial. Specifically, he argues that the prosecution misstated the law in regard to voluntary intoxication, and that the prosecution's reference to a "single woman's worst nightmare" was intended to inflame the jury. We conclude that any improper argument was harmless.

### A. Standard of Review

■ We review claims of prosecutorial misconduct in closing argument for abuse of discretion. *Harris v. People*, 888 P.2d 259, 265 (Colo.1995). "Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury." *People v. Shepherd*, 43 P.3d 693, 697 (Colo.App.2001).

■ An objected-to trial error not of constitutional dimension will be disregarded as harmless whenever there is no reasonable probability that it contributed to the defendant's conviction. *Crider v. People*, 186 P.3d 39, 42 (Colo.2008).

### B. Prosecutor's Statements of the Law

Defendant argues that the prosecution continually misstated the law on voluntary intoxication and repeatedly referred to the allegedly improper jury instruction pertaining to intoxication.

■ In closing argument counsel may "comment on the evidence admitted at trial, the reasonable inferences that can be drawn therefrom, and the instructions of law given to the jury." *Shepherd*, 43 P.3d at 697. However, counsel may not misstate or misinterpret the law. *Id.*

■ Defendant objects to the prosecutor's statement that his defense to some of the charged crimes was that he was "so intoxicated it negates his intent." However, the prosecution's characterization of defendant's chosen defense was consistent with the supreme court's description of its operation. *See Harlan*, 8 P.3d at 471 ("Section 18-1-804(1) absolves a defendant of liability only for a specific intent offense when the evidence of intoxication negates the existence of the specific intent."). Additionally, the prosecution's characterization is supported by defense counsel's own closing argument: "He is guilty of being in [the victim's] house without permission, but he's not guilty of burglary, which requires him to have intent, because he was so drunk."

■ Defendant also takes issue with the prosecution's statement that in order for the voluntary intoxication statute to absolve him of liability, he "has to be drunk to such a degree that he didn't have intent." Although this statement is somewhat of a simplification, it is a fair paraphrase of section 18-1-804(1).

Additionally, defendant objects to the prosecutor's hypothetical conversation with the jury: "Is that what [defense counsel] is telling you? That he was so drunk that he couldn't form that culpable mental state? Or is she severely lowering the standard by saying, well, he wouldn't have done it without the liquid courage. Because that's what she is really saying." Although defendant objected to this statement at trial on the grounds of burden shifting and improper argument, he has not explained on appeal precisely what about it he finds improper. Our independent review has provided us no reason to believe that the trial court abused its discretion by overruling defendant's objection.

As discussed above, the jury instruction regarding voluntary intoxication was not erroneous. Consequently, we reject defendant's remaining arguments that assume it was so.

### C. Prosecution's "Single Woman's Worst Nightmare" Remark

█ Defendant argues that the prosecution committed misconduct by stating orally and including in a slide presentation that the events that transpired on the night of the crime were a "single woman's worst nightmare."

█ Prosecutors have wide latitude in the language and presentation style they employ in closing argument. *Domingo–Gomez v. People,* 125 P.3d 1043, 1048 (Colo.2005). However, they may not inflame and appeal to the jury's passions or prejudices. *People v. Walters,* 148 P.3d 331, 334 (Colo.App.2006).

We will assume, without deciding, that the prosecution's reference to a "single woman's worst nightmare" could have been intended to inflame the passions of the jury, inasmuch as it could be perceived as a veiled inference that defendant intended to perpetrate a sexual assault upon the victim when he entered her residence. However, inflammatory comments rarely rise to the level of constitutional error. *See Crider,* 186 P.3d at 42. Consequently, we review for harmlessness.

Here, we cannot conclude that there is a reasonable probability that this isolated statement, heard in the context of all the evidence presented at trial, contributed to defendant's conviction. *See id.* Hence, it does not warrant reversal.

### VI. Double Jeopardy

Defendant contends that the trial court's failure to merge lesser included offenses into his burglary conviction unconstitutionally subjects him to double jeopardy. We conclude that there are no lesser included offenses involved here and thus disagree with this contention.

### A. Standard of Review

█ The Double Jeopardy Clauses of the federal and state constitutions and the judi-

cially created rule of merger prohibit courts from imposing multiple punishments for greater and lesser included offenses. *Armintrout v. People,* 864 P.2d 576, 578 (Colo. 1993); *People v. Delci,* 109 P.3d 1035, 1036 (Colo.App.2004); *People v. Ramirez,* 18 P.3d 822, 830 (Colo.App.2000). Whether one offense is included in another is a question of law that we review de novo. *See Armintrout,* 864 P.2d at 579.

### B. Applicable Law

Courts may convict a defendant of multiple offenses arising out of a single transaction if he or she has violated more than one statute, but a defendant cannot be convicted of both a greater and a lesser included offense. § 18–1–408(1)(a), C.R.S.2008; *Ramirez,* 18 P.3d at 830.

We normally apply the strict elements test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether one offense is a lesser included offense of another. *Delci,* 109 P.3d at 1036. By statute, a lesser included offense is one that is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged. § 18–1–408(5)(a), C.R.S.2008; *Delci,* 109 P.3d at 1036. Similarly, predicate offenses are those for which all of the elements must be proved in order to sustain a conviction for a greater offense. *See Delci,* 109 P.3d at 1037.

According to statute, first degree burglary occurs when a person

> knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime, other than trespass as defined in this article, against another person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, the person ... assaults or menaces any person, or the person or another participant is armed with explosives or a deadly weapon.

§ 18–4–202(1).

█ The crime of burglary is complete when the burglar enters a building or occu-

pied structure with the requisite intent. *People v. Gill*, 180 Colo. 382, 385, 506 P.2d 134, 136 (1973). So long as the burglar *intends* to commit a crime when he enters, it is not necessary that he actually complete the object of his intent. *See id.; People v. Palmer*, 87 P.3d 137, 140 (Colo.App.2003).

▮ To commit first degree burglary, in addition to entering a building or other occupied structure with intent to commit a crime therein, a person must actually assault or menace someone, or must be armed with either explosives or a deadly weapon. § 18–4–202(1); *Litwinsky v. Zavaras*, 132 F.Supp.2d 1316, 1320 (D.Colo.2001). The statute is phrased in the disjunctive; only one of these conditions need be met to complete the offense. *Id.* If the prosecution can show that a defendant was armed with a deadly weapon, there is no requirement to show that the defendant assaulted or menaced anyone. *People v. Loomis*, 857 P.2d 478, 481 (Colo. App.1992).

### C. Application to First Degree Burglary

▮ Here, the trial court instructed the jury that the elements of first degree burglary included that defendant

(3) knowingly,

(4) unlawfully entered or remained in a dwelling,

(5) with intent to commit therein the crime of Criminal Tampering, or Menacing, and

(6) while in effecting entry into, or while inside, or in immediate flight from the dwelling,

(7) the defendant assaulted or menaced [the victim], or the defendant was armed with a deadly weapon.

Element number five did not require the prosecution to prove all of the elements of either criminal tampering or menacing in order to prove that defendant committed burglary. Rather, the prosecution needed only to prove that he intended to commit tampering or menacing when he entered the victim's home. *See Gill*, 180 Colo. at 385, 506 P.2d at 136. Thus, neither criminal tampering nor menacing is a lesser included offense and neither therefore merges with the burglary conviction.

▮ Element number seven required the jury to find that defendant *either* committed assault *or* committed menacing *or* was armed with a deadly weapon in order to be guilty of first degree burglary. In a special interrogatory attached to the burglary verdict, the jury found that defendant was armed with a deadly weapon. Because it made that finding, the prosecution was not required to prove the elements of either assault or menacing in order to prove the elements of first degree burglary. *See Loomis*, 857 P.2d at 481. Thus, neither assault nor menacing is a lesser included offense, and neither merges with the burglary conviction.

Contrary to defendant's contention, *People v. Ramirez*, 18 P.3d at 830, does not require a contrary result. There, the division stated, as defendant notes, that "[t]he elements of assault or menacing must be proven in order to sustain a conviction for first degree burglary . . . ." *Id.* However, defendant neglects to note the qualifying language that follows the division's statement; that is, "as it was charged and instructed in this case." Specifically, the jury instructions there told the jury that it must find that the defendant entered with intent to commit the crimes of assault and menacing, and that while in doing so, he assaulted or menaced any person. 18 P.3d at 827. Accordingly, the burglary instructions in *Ramirez* required the jury to find defendant actually committed an assault or menaced the victim as elements of the offense and, when it did so, merger of one of the underlying offenses was required.

*Litwinsky*, 132 F.Supp.2d at 1320, is also distinguishable. There, the court specifically noted that there are four alternative means by which a person may commit first degree burglary once he has unlawfully entered a building or occupied structure with the intent to commit a crime therein: (1) assaulting, or (2) menacing anyone inside, or (3) being armed with explosives, or (4) being armed with a deadly weapon. The court noted that because the statute is phrased in the disjunctive, only one of these predicates is required to complete the offense of first degree burglary.

The *Litwinsky* court held that, because the jury instructions there were predicated on both assault and menacing and the jury returned a general verdict that did not specify which predicate offense it found the defendant had committed, merger was required. Here, in contrast, there was not a general verdict, and the jury specifically found defendant was armed with a deadly weapon.

#### D. Application to Criminal Trespass

Defendant also argues that first degree criminal trespass is a lesser included offense of first degree burglary. We disagree.

First degree criminal trespass is not a lesser included offense of first degree burglary, because it requires entry into a dwelling, which is not an element of burglary by statute or as charged and instructed here. *See People v. Satre*, 950 P.2d 667, 668 (Colo. App.1997); *see also People v. Garcia*, 940 P.2d 357, 362 (Colo.1997) ("first degree criminal trespass is not a lesser included offense of second degree burglary").

Defendant cites *Auman v. People*, 109 P.3d 647 (Colo.2005), for the contrary proposition. However, that case's comments on the relationship between criminal trespass and burglary were made in reference to the defendant's theory of defense, *id.* at 669, and the jury instructions presented in furtherance of that defense, *id.* at 674. We find that dicta far less persuasive than the unambiguous statements of the law contained in *Satre* and *Garcia*. We therefore reject this argument.

The judgment is affirmed.

Judge BERNARD and Judge MILLER concur.